WALLIE CHARPENTIER v. JAMES CUMMING.[1]

November 29, 1929.

No. 27,500.

[1]Reported in 227 N. W. 663.

*Massee & Massee,* for relator.
*Hugo V. Koch,* for respondent.

OLSEN, C.

Certiorari to review an order of the industrial commission awarding compensation to Wallie Charpentier, respondent, for injuries suffered while in the employ of James Cumming, relator. For brevity the parties will hereinafter be referred to as respondent and relator.

The respondent entered the employ of relator on August 23, 1928, on a farm near East Grand Forks in this state. On the morning of September 20 he was injured while engaged in putting a belt upon a gasolene engine and pump used to pump water into a tank near a barn on the farm for watering horses and other stock.

The industrial commission, one member dissenting, found that at the time of the accident relator was engaged in the business of farming, and in addition thereto was engaged in the business of a commercial thresherman; that he had not elected not to be bound by the compensation act in his business of commercial thresherman; that he carried no compensation insurance; that respondent was at the time of the accident employed in relator's business as a commercial thresherman and that the injury arose out of and in the course of his employment in said business; and awarded compensation.

Two questions are presented for review: (1) Does the evidence sustain the finding that the relator was engaged in the business of a commercial thresherman; (2) does the evidence sustain the finding that the injury sustained arose out of and in the course of respondent's employment in that business.

Relator owned a farm of about 880 acres, about 700 acres of which was put into crop each year. His son owned a farm of 200 acres and was in with his father on the home farm, living near-by.

The father owned a steam threshing rig. With this rig threshing was done on his own and his son's farm and for other farmers in the vicinity within about three miles. During the season of 1928 threshing was done for eight such other farmers. Relator had owned the rig for five years and had done threshing in this way each season. The time spent in threshing was from 15 to 19 days each season. In threshing for these other farmers he charged them $24 per hour for the time threshing was actually done for each respectively, except in one case the agreed charge was made $22 per hour. The machine was moved from place to place to the different farms. The charge so made included the full threshing crew and the furnishing of board and lodging for the crew. Relator and his son had six teams which they used in threshing. For the purpose of making up the crew, relator hired in 1928 some six or seven men, including respondent. These men were laborers, coming from different places in this and other states. The agreement with respondent was that he was to be paid $5 per day for threshing. He was hired for work in threshing and assigned to work driving a bundle team. Apparently, also, he was to have his board and lodging. The crew stayed at relator's farm nights and received their breakfast and supper there. The noon meals and lunches were brought to them from the relator's farm to whatever place they were threshing. Some 18 or more men and 12 or more teams were required. The threshing was from shock. Even with the addition of the men hired by relator and his son and teams, there were not sufficient men and teams to make a full crew, so the arrangement was that the farmers for whom threshing was done would furnish additional men and teams as needed and as they were able to furnish to make up the full crew. For men and teams so furnished relator agreed to pay, or give credit on threshing bills, at the rate of $7 per day for a man and team and $5 a day for a man without team. Operations were so carried on and accounts adjusted with these farmers at the close of the threshing season.

G. S. 1923 (1 Mason, 1927) § 4326(m), defines "commercial threshermen" as persons going about from place to place threshing grain

as a business; provided that farmers owning threshing machines not engaged in such business generally and doing their own threshing, or casually doing such work for other farmers in the same community, and farmers exchanging work among themselves, shall not be classed as commercial threshermen.

Threshing grain is at most a seasonal business confined to a limited time during the fall months of each year. Hence we take it that generally all threshermen are engaged in other business or occupations for the greater part of each year. Relator had been engaged in the business of threshing in this same manner regularly for more than five successive seasons. The work done was not casual. The commission was not required to find that there was an exchange of work among the farmers. It is quite clear that there was no exchange of work among these other farmers for whom threshing was done. In substance, relator hired them as members of his threshing crew and hired out his machine with full crew to each of them. The fact that payment for their services was made by giving each credit on his threshing bill, paying over only any balance due the farmer or any balance due relator, does not necessarily amount to any exchange of work.

There is no material dispute in the evidence on this point. No very helpful authorities on either side have been cited, and probably none exist on the precise question involved. We conclude that upon the evidence presented and the reasonable inferences to be drawn therefrom the commission was justified in finding that the relator was engaged in the business of a commercial thresherman.

■ Did the accident arise out of and in the course of respondent's employment in the business of threshing? As already stated, respondent was employed to drive a team hauling bundles from the field to the threshing machine. This included taking care of the team. He had been so engaged since he commenced work, except as hereinafter stated. On the day before the accident he had been so employed in threshing on the relator's farm. On the morning of the accident the rig was to move to another place to do threshing. Respondent had his team ready to go with the rig. He took the

team out to a rack alongside the watering tank and started the gasolene engine which was used for pumping the water for the horses and other stock. He had been told to start this engine and had done so before. In attempting to put on the belt from the engine to the pump his arm got caught in the belt and he was injured. There is evidence that respondent did other work than threshing at the farm. He assisted for two days in filling a silo. The threshing was interrupted by rain, and at such times and in spare time he helped repair an automobile and other machinery; helped put some hay in the barn; hauled some manure; and did other odd jobs. Some of the other men there did likewise. There is evidence that for work in filling the silo the men were paid the same as for threshing; that for other work they were paid $3.50 per day.

We conclude on this question that the commission could reasonably find that the pumping of water was, in part at least, for the use of the teams engaged in threshing and was a part of respondent's duties as a member of the threshing crew, and that the accident arose out of and in the course of his employment in the business of threshing.

We are not to be understood as saying that a contrary finding by the commission would not also be sustained.

The order of the industrial commission is affirmed.