# MARY TUCKWELL WARNER v. MAURICE A. WARNER.[1]

December 22, 1944.

No. 33,860.

[1]Reported in 17 N. W. (2d) 58.

60

*Brill, Maslon, Grossman & Brill,* for appellant.
*Faegre & Benson* and *Raymond Scallen,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was a suit for divorce wherein plaintiff secured a final judgment "absolutely" dissolving "the bonds of matrimony heretofore existing between plaintiff and defendant." The decree was entered November 9, 1928. The present proceeding, begun about 15 years later, is one wherein plaintiff moved the court to amend the original conclusions of law and the decree entered pursuant thereto—

"by adding thereto a provision requiring the defendant to pay the plaintiff a full one-third of the additional resources and income which the defendant has acquired since the decree * * * was entered."

Defendant's special appearance "on the ground that the court is without jurisdiction in the premises" was sustained, and plaintiff appeals.

The parties to this suit were married at Minneapolis January 1, 1918. Plaintiff's suit for divorce, founded upon the ground of cruel and inhuman treatment, was begun October 5, 1927. Defendant's answer denied all charges of cruelty and alleged, by way of a cross-bill, that plaintiff had treated him in a cruel and inhuman manner, and he asked for a divorce under his cross-bill. There was a reply denying all new matter pleaded in the answer and cross-bill. Thus and thereby the case was at issue.

Trial was not had until November 5, 1928, when the cause was heard by the Honorable E. F. Waite. In the meantime, however, the parties and their respective counsel, on October 19, 1928, had reached a "mutually" satisfactory agreement whereby, in the event

the court should award a decree of divorce to plaintiff, it should also adjudge and decree that the legal title to their home in Minneapolis should be vested in a named trust company, in trust, however, for the "minor children of the parties." The trustee was authorized to sell the home at any time "when in its judgment and discretion" it was deemed advisable. The proceeds from such sale were to be administered by the trustee for the support of the children; and, "if so requested by the Plaintiff, and if deemed advisable" by the trustee, the proceeds from such sale could be used for the purchase of another home for them. Upon the youngest child's reaching maturity, the trust "shall cease," and the property, if not sold, or the remaining proceeds, if sold, "shall be divided equally among the children."

In respect to the property of the parties, other than the home, it was agreed that:

"It is understood and agreed that all of the furniture in said home, together with the equipment therein contained, shall be the property of the Plaintiff, excluding therefrom only the personal effects of the Defendant."

The custody of the minor children was to "be declared by the Court to be in the parties hereto jointly," but they were to "live with the Plaintiff" and be subject to her "actual control," with the understanding that the Defendant may visit said children at all reasonable times." Paragraph IV is important, and we quote it in full:

"That there shall be no allowance of alimony to the Plaintiff, either temporary or permanent, or any suit monies against this Defendant, except counsel fees, it being specifically understood and agreed that this agreement and the provisions thereof shall constitute a full and complete settlement of all the property rights of the parties hereto and Plaintiff does specifically waive any claim against any of the property of the Defendant or any right for anything of value from said Defendant, save and except as herein specifically provided."

Paragraph V, so far as here material, provides:

"It is further understood and agreed * * * that *this agreement shall have no force or effect whatsoever* unless a divorce be granted as prayed for in said Complaint and *unless this agreement shall·be submitted to said Court and in all things approved thereby,* and unless the substance of this agreement shall be incorporated and set forth in the findings and decision of said Court to be made and entered herein." (Italics supplied.)

This instrument obviously bespeaks careful consideration of the problems to be met and adjusted between the parties. Counsel thereupon agreed that the case should be tried as one in default, defendant's answer having, "by leave of court, been withdrawn." It was so tried, and the findings substantially adopted the provisions of the agreement. Paragraph six thereof is revealing. It reads:

"That on the 19th day of October, 1928, the plaintiff and the defendant, and their respective counsel, did enter into and execute an agreement with respect to the custody and maintenance of the children and a settlement of their respective property rights; that a copy of said agreement, Exhibit 'A' is attached hereto and by this reference *made a part hereof."* (Italics supplied.)

The conclusions of law directed entry of judgment: That the marriage relation should be dissolved; that the legal title to the family home should be vested in the designated trust company in trust for the children, all in strict accordance with what counsel and the parties had formally agreed upon in their settlement agreement. Paragraph (c) of the conclusions of law provided:

"That the plaintiff shall have as her own separate property all of the furniture located in the premises hereinbefore described, together with the equipment therein contained, excluding therefrom only the personal effects of the defendant."

Paragraph (e) ordered that the defendant should pay to plaintiff's attorneys $350 as attorneys' fees.

Alimony only is involved in this proceeding. In neither the findings nor conclusions of law is anything said on this important phase, although in her complaint plaintiff had asked to be awarded—

"as alimony and support money for herself and her minor children, the sum of ten thousand dollars ($10,000.00) per year, and such part of the property of the defendant as may be just or authorized by statute."

Subsequently and before trial, she and her attorneys agreed that "there shall be no allowance of alimony." That the parties entered into the settlement knowingly and with full realization of its import and purpose cannot be doubted. Thoroughly competent counsel represented the parties. Unquestionably, they were fully advised as to their rights and obligations. Both husband and wife undoubtedly compromised their respective claims and demands to avoid as far as possible the notoriety and uncertainty that invariably go with this type of litigation. Upon the strength and validity of this agreement, plaintiff may well have waived her claim to alimony. For this concession on her part, defendant probably withdrew his answer and cross-bill. No other reasons are suggested in the agreement. As to plaintiff, this conclusion is fortified by the fact that for 15 years there was complete silence and acquiescence. And there is no claim that defendant has violated any requirement imposed upon him by the decree. Plaintiff in her affidavit supporting her present motion states that all the children are "of age now and no longer dependent, excepting Henry Tuckwell Warner, who is now nineteen years of age and in the United States Army." She asks nothing for or in Henry's behalf. All she wants is alimony to the extent of "a full one-third of the additional resources and income which the defendant has acquired since the decree * * * was entered." Nowhere do we find that her own financial situation has changed to her detriment from what it was when the decree was entered. As a matter of fact it has improved, since in her affidavit she says that—

"she is the beneficiary under the will of the father of her former

husband, one E. C. Warner, which will is now being probated in the state of Florida, and under which will she was given a beneficial interest in a trust, out of the net income from which, if earned, the sum of $1,000 per year is to be paid to her for the period of six years and no more, and only while she remains unmarried."

Judge Bardwell, who heard and passed upon plaintiff's motion, in his memorandum, after reciting the facts, pointedly observed:

"* * * There can be no contention but what the agreement was entered into by both parties in good faith, and that while the findings of fact and conclusions of law are silent as to alimony, the court was fully advised in the premises; that it was the intention of the court and the intention of the parties that a full and complete property settlement had been made, and that there was no alimony or support money of any kind to be paid by defendant.

"It is a well-settled principle of law that where alimony is allowed, the court retains jurisdiction at all times to modify or change its order if conditions warrant. The court feels that the great weight of authority clearly contemplates that where the right to alimony has been established, if alimony is allowed, the amount may be changed by modification of its order. The court feels that in the present case there is nothing to modify. After the judgment granting plaintiff a divorce, plaintiff was no longer the wife of defendant, and he now or since the entry of judgment owes her no marital duty; that from that time she could enforce against him no obligation not imposed by the court at the time of the judgment. In the case at bar the court believes that the judgment became final without a word as to alimony, and that the court could not afterwards modify that which never existed. Our conclusion then is that this Court at this time has no jurisdiction to make the order requested by plaintiff."

The following sections of our statutes are deemed important in our discussion of the issues. Minn. St. 1941, § 518.22 (Mason St. 1927, § 8602), reads:

*"Upon a divorce for any cause* except that of adultery committed by the wife, if the estate and property restored or awarded to her is insufficient for the suitable support of herself and such children of the marriage as shall be committed to her care and custody, or if there is no such estate and property, *the court may further order and decree to her such part of the personal and real estate of the husband,* not exceeding in value one-third thereof, *as it deems just and reasonable,* having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case. *The court may also,* in the cases provided for in this section, *decree to the wife such alimony out of the estate, earnings, and income of the husband as it may deem just and reasonable,* having regard to the ability of the husband, the character and situation of the parties, and other circumstances of the case, and may by its decree make the same a specific lien upon any specified parcels of his real estate, or authorize its enforcement by execution against his property, real and personal; but the aggregate award and allowance made to the wife from the estate of the husband under this section shall not in any case exceed in present value one-third of the personal estate, earnings, and income of the husband, and one-third in value of his real estate." (Italics supplied.)

Section 518.23 (§ 8603) provides:

*"After an order or decree for alimony,* or other allowance for the wife and children, or either of them, or for the appointment of trustees to receive and hold any property for the use of the wife or children, *the court,* from time to time, on petition of either of the parties, *may revise and alter such* order or *decree* respecting the amount of such alimony or allowance, and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any order respecting any of these matters which it might have made in the original action." (Italics supplied.)

And in § 518.27 (§ 8607) we find:

"When a decree of divorce from the bonds of matrimony is grant-

ed in this state, such decree shall completely dissolve the marriage contract as to both parties. * * *"

■ "In the United States all divorce jurisdiction is statutory." Our district court has in such matters only the powers "delegated to it by statute." Ostrander v. Ostrander, 190 Minn. 547, 549, 252 N. W. 449, 450; Sivertsen v. Sivertsen, 198 Minn. 207, 210, 269 N. W. 413, 415. As a corollary thereto, we may add what this court said in State v. Armington, 25 Minn. 29, 37:

"* * * To each state belongs the exclusive right and power of determining upon the status of its resident and domiciled citizens and subjects, in respect to the question of marriage and divorce, * * *."

So, likewise, in Cheely v. Clayton, 110 U. S. 701, 705, 4 S. Ct. 328, 330, 28 L. ed. 298, 299, it was held:

"The courts of the State of the domicil of the parties doubtless have jurisdiction to decree a divorce, in accordance with its laws, for any cause allowed by those laws, without regard to the place of the marriage, or to that of the commission of the offence for which the divorce is granted; and a divorce so obtained is valid everywhere."

■ In this class of cases, it is the marriage status that furnishes the subject matter of the court's jurisdiction. Thurston v. Thurston, 58 Minn. 279, 285, 59 N. W. 1017, 1018. It is that status, "not the cohabitation, which is subject to the jurisdiction of the court." Rose v. Rose, 132 Minn. 340, 342, 156 N. W. 664, 665.

■ Because the preservation of the sanctity of the marriage relation is deemed essential to public welfare, the state, representing the public, "is interested in seeing that divorce is granted only on lawful grounds and in a lawful manner." Brockman v. Brockman, 133 Minn. 148, 151, 157 N. W. 1086, 1087. That is the reason why a divorce may not be had without proper proof that statutory grounds exist. Mere consent of the parties is not enough. To the accomplishment of that purpose, and until a decree is entered, the

68

court will seek the truth (133 Minn. 151, 157 N. W. 1087) "from whatever source it may come." In Adams v. Adams, 25 Minn. 72, 77, we said:

■ "* * * It is not within the power of the parties to terminate it [the marriage status] at pleasure, or for any cause. Its dissolution can only be declared by a court of competent jurisdiction, for some specified cause prescribed by law, and which must be ascertained upon proofs taken in the regular course of a judicial proceeding instituted for that purpose."

Plaintiff's position is that there are but two issues before us, namely (1) the award to her of the personal property in the home "constituted an award of alimony," hence that the trial court erred in sustaining defendant's special appearance; and (2) in the event this court should hold the award respecting the personal property did not constitute an award of alimony, yet, under our statutes, the court had jurisdiction to entertain her motion and to grant her the relief sought.

■ We have held in many cases that alimony is purely a matter of statutory creation. It is awarded not as a penalty, but as a substitute for the husband's duty to provide his wife with adequate support, i. e., it is a substitute for marital support. Haskell v. Haskell, 119 Minn. 484, 487, 138 N. W. 787, 789. Our cases are cited in 2 Dunnell, Dig. & Supp. § 2803. In 17 Am. Jur., Divorce and Separation, under the title "Alimony and Other Allowances," § 496, the author states, in substance, that alimony "signifies literally nourishment or sustenance."

■ In this case it is obvious that no alimony was to be given plaintiff under the agreement she and her husband had made. It is true, of course, that contracts of this type are subject to careful and searching scrutiny on the part of the court to the end that it may not serve as a mere subterfuge for obtaining an easy divorce. Yet, if such contracts are not conducive to the procurement of divorce, the validity thereof depends upon whether the contract is otherwise fair and just, made in good faith, without purpose or in-

tent on the part of either party thereto to circumvent the law. In other words, if such contract is fair and equitable under the circumstances, fairly entered into, and especially where, as here, the contract was made under the watchful eye of competent counsel representing the parties and was specifically made a part of the court's findings, no reason exists under our statute and decision law for casting it aside. 17 Am. Jur., Divorce and Separation, § 624. Our own cases sustain that view. Thus, in Nelson v. Vassenden, 115 Minn. 1, 4, 131 N. W. 794, 795, 35 L.R.A. (N.S.) 1167, where this question arose, our holding was this:

"In divorce actions, any agreement between the parties to influence the decision of the court by concealment or misrepresentation is collusive and void, and every agreement made between the parties to a divorce action concerning property rights or alimony is carefully scrutinized by the court, for the purpose of determining that it is not a part of a collusive arrangement to facilitate the granting of a divorce, and that it is not the result of imposition on one of the parties. * * * A fair agreement between the parties for a payment or division of property, made without collusion as to the procuring of the divorce, is not opposed to, but is in aid of, the orderly and just determination by the court of the question involved in the action.

"In this case it is found that the contract in question was made after the court had announced its decision to grant a divorce, and the contract so recites. The parties are presumably able to determine the needs of one and the ability of the other, and when they arrive at an adjustment of property rights, in the absence of evidence of unfairness, such adjustment is, and should be, usually accepted by the court.

"* * * It is a matter of common practice to make payments or transfers of property in discharge of such recognized obligation, without such settlements being embodied in the divorce decree."

Plaintiff, however, argues that, since Judge Waite had not—

"incorporated in full" in his conclusions of law and resulting de-

cree, and since there was nothing in the decree "which stated that the plaintiff should not be entitled to any allowance of alimony or that the agreement theretofore entered between the two parties should constitute a full and complete settlement of the [property] rights of the parties," therefore, she thinks that, although "this agreement was called to the attention of the court and its terms known to it," in fact made a specific part of its findings, yet, for the reasons stated, she now assumes that the court "intentionally omitted" the portion thereof "relating to alimony and the release clause and refused to accept or be bound by the same."

■ No one can doubt, as we have already pointed out, that plaintiff, with the aid and advice of counsel, fully knew and understood the purpose and effect of this highly important agreement. It was not an idle ceremony, but entered into knowingly and intentionally to make effective its expressed objectives. There is no suggestion that there was fraud practiced by anyone, no overreaching, no mistake or collusion. For a period of 15 years it stood unchallenged. In view of the facts and circumstances recited and with the knowledge we have of Judge Waite's fine legal attainments and his many years of active and distinguished service as a judge of the district court of Hennepin county, where he justly earned the reputation of being an authority in the field of domestic relation law, no one should suspect that he overlooked or failed to observe all the provisions of the agreement. Note may well be taken of the specific proviso therein that it "shall have no force or effect whatsoever unless * * * this agreement shall be submitted to said court and in all things approved thereby."

We concur in Judge Bardwell's view, "that it was the intention of the court [Judge Waite] and the intention of the parties that a full and complete property settlement had been made, and that there was no alimony or support money [to plaintiff] of any kind to be paid by defendant."

■ There is of course a clear distinction in the law between a divorced husband's obligation to his former wife and his obligation

to his children. Alimony, as we have seen, is governed by statutory enactment. But a father's duty to support his children, naturally and properly, is not suspended by a divorce of the parents. We pointed out that distinction in Hove v. Hove, 218 Minn. 612, 16 N. W. (2d) 776, where we said that "an allowance which a husband may be required to pay for the maintenance of minor children is distinct from an allowance of alimony," citing 17 Am. Jur., Divorce and Separation, § 695. The prevailing view is that, "where a divorce is granted at the suit of the wife, the wife may maintain an action against the husband to recover for expenses incurred by her for their support." *Id.* § 693, and cases under note 8. Our own cases are in full accord. Spencer v. Spencer, 97 Minn. 56, 105 N. W. 483, 2 L.R.A.(N.S.) 851, 114 A. S. R. 695, 7 Ann. Cas. 901; Jacobs v. Jacobs, 136 Minn. 190, 161 N. W. 525, L. R. A. 1917D, 971.

After all, it should be, and is, the policy of the law not to deprive children of their right to support from their father, their natural provider, because of the dissension of the parents. Generally, they are innocent of the causes leading to their parents' quarrels.

"* * * The legal and natural duty of the father to support his children is not to be evaded by him on the ground of his own wrong-doing, or even on the ground of any dissensions whatsoever with his wife. A natural father would not think of doing so, and an unnatural one should not be permitted to do so." *Id.* § 693, and cases under note 16.

We now come to plaintiff's second premise, namely, that if this court should hold the transfer of defendant's interests in the personal property in the family home (the value and extent of which and defendant's interest therein are not shown) should not be deemed an award of alimony, "nevertheless" the court "had jurisdiction to entertain a motion of the kind put before it for the modification of the divorce decree."

This is the issue to which counsel have devoted most of their time and effort in their respective briefs, citing numerous cases to sup-

port their opposing claims. As we have seen, the trial court was of the opinion—

"that the great weight of authority clearly contemplates that where the right to alimony has been established, if alimony is allowed, the amount may be changed by modification of its order. The court feels that in the present case there is nothing to modify. After the judgment granting plaintiff a divorce, plaintiff was no longer the wife of defendant, and he now or since the entry of judgment owes her no marital duty."

■ We have read counsel's briefs with care, also the many cases cited. That the weight of authority is where the trial court placed it cannot well be denied. However, since the question is a new one in this jurisdiction and since decisions rendered in other states are founded upon statutory law different from our own, we should not feel bound by mere numbers, but rather by the convincing qualities of the reasons employed in reaching a solution of the problem in the light of statutory provisions interpreted.

We cannot, within the reasonable limits of an opinion, comment upon all cases cited, but shall limit our efforts to those which we think most directly in point.

In Bassett v. Bassett, 99 Wis. 344, 74 N. W. 780, 67 A. S. R. 863, the syllabus (74 N. W. 780), well sustained by the facts recited in the opinion, reads:

"Rev. St. § 2369, provides that, after a judgment providing for alimony for the wife, the court may, from time to time, on the petition of either of the parties, revise and alter such judgment as to the amount of such alimony allowance, and may make any judgment respecting any of said matters which such court might have made in the original action, but when a final division of the property shall have been made under section 2364, no other provision shall thereafter be made. *Held,* that in an action for divorce and alimony, where the decree granted the divorce, but was silent as to alimony, the court had no power to open the judgment or to make any additional judgment for alimony."

The trial court, after hearing plaintiff's petition asking for a share of her former husband's property as alimony, granted the relief sought. On appeal the supreme court reversed, saying (99 Wis. 346, 74 N. W. 781):

"* * * [the] proposition quite firmly settled by the adjudications in this state is that the revisory power of the court under this section is always open when the court has, *in the first instance,* granted alimony or made some allowance short of a final division of the husband's property." (Italics supplied.)

And further (99 Wis. 347, 74 N. W. 781):

"* * * The policy of the law is that judgments once solemnly entered shall be final and conclusive, and, when the term is ended, the record is in the roll, and not in the breast of the judges. Under the statute, what judgment is it that may be altered and revised after the term? Clearly, only such a judgment as shall have made some provision for alimony or allowance to the wife. By expressly granting the authority to revise or alter a particular judgment, it impliedly prohibits the exercise of that power as to any other judgment."

The same conclusion was reached also in Hannon v. Hannon, 230 Wis. 620, 284 N. W. 499.

Similarly, in Moross v. Moross, 129 Mich. 27, 87 N. W. 1035, where the Michigan statute on this question is practically on all fours with our own, the court, after quoting the statute, said (129 Mich. 29, 87 N. W. 1036):

"Had any provision for alimony been incorporated in the original decree, there can be no doubt that, under this statute, the court would have the power to grant a further allowance now."

But, since the original bill contained a prayer for permanent alimony, no mention of alimony being made in the decree, the relief sought could not, "under any circumstances, now be litigated"; hence the trial court which had denied the wife's petition for the

allowance of alimony, after the decree of divorce had been entered, was affirmed.

In Marshall v. Marshall, 162 Md. 116, 119, 159 A. 260, 261, 83 A. L. R. 1237, 1239, the court had before it this question:

"* * * Can alimony be awarded the wife after enrollment of the decree granting her a divorce *a vinculo matrimonii* upon a bill in which alimony was asked for but not allowed her, the decree being silent as to alimony, and reserving no authority or power in the court to consider and pass upon the question of alimony at a time subsequent to the passage of the decree?"

The court then proceeds with a discussion of its prior cases as well as cases from other jurisdictions, and distinguishes a divorce from bed and board from that of an absolute divorce, saying (162 Md. 122, 159 A. 262, 83 A. L. R. 1241):

"There is, we think, a very material difference in the two classes of cases, a difference which justifies a different conclusion as to the application of the rule. In the first class, the court, in the passage of the decree, has not exhausted its jurisdiction, inasmuch as it retains a continuing jurisdiction as to the enforcement of the payment of alimony so long as it is payable. In the second class of cases, where the decree grants an absolute divorce, with no reservation of power in respect to the allowance of alimony thereafter, not only are the marriage ties completely severed, but the man is relieved of the obligation of a husband to support his wife. In that case, the jurisdiction of the court is fully exhausted, there being nothing further for the court to do in the exercise of its jurisdiction in relation to the subject matter of the decree; while in the former class of cases, the marriage ties are not completely severed, the parties remain man and wife, and the obligation is still upon the husband to support his wife. In one class of cases there is a continuing jurisdiction, while in the other there is not.

\* \* \* \* \*

"There is no case in this state that we have found, or to which we have been referred, that has passed upon the question whether

a decree *a vinculo,* dissolving the marriage and terminating the husband's duty to support his wife, and awarding to her no alimony, as in the case before us, can after enrollment be modified so as to allow her alimony," citing numerous cases, among them Spain v. Spain, 177 Iowa 249, 251, 158 N. W. 529, 530, L. R. A. 1917D, 319, Ann. Cas. 1918E, 1225, from which it quotes as follows:

"* * * 'At common law and under ecclesiastical procedure courts did entertain such an action as this, but this was because there was no such thing as an absolute divorce known to either law. The divorce was from bed and board, and was little more than a legalized separation. The duty of the divorced husband to support his wife continued after the divorce was granted, and these courts recognized the right to enforce this obligation by changing the original decree or order to meet new conditions, so that, if the divorced husband thereafter acquired property in any manner, even through inheritance, the court opened up the matter of alimony and modified its original order to meet the new conditions. In such proceedings both the needs of the former wife and the ability of the former husband were considered on application to modify the decree [citing cases]. In this country * * * a divorce absolutely dissolves the marriage status, and the duty of support no longer exists. Alimony is allowed in such cases in lieu of * * * refusing, denying, or failure to award it, save for such fraud or mistake as would authorize the setting aside or modification of any decree.'

"In the present [Marshall] case there is no allegation of fraud or of such mistake as would authorize the modification of the decree. The application for modification of the decree was made some two months after the passage of the decree and after its enrollment. If an absolute decree of divorce where alimony is refused, or not allowed, may be opened and modified two months after its passage, there is nothing to prevent it from being opened and modified two years or more after its passage, and after the husband has assumed other obligations, rightfully believing from the final character of the decree that he was free from all further obligations to support one who had ceased to be his wife."

In Duvall v. Duvall, 215 Iowa 24, 244 N. W. 718, 83 A. L. R. 1242, plaintiff sought, pursuant to § 10481 of the Code of Iowa, 1931, to have the original decree of divorce, theretofore entered, so amended as to allow plaintiff one-third of the husband's property which he had acquired by inheritance. In the original decree, because of a settlement made by the parties, the court had determined that (215 Iowa 27, 244 N. W. 719, 83 A. L. R. 1245) "no alimony is allowed by the court." She asserted that in this settlement alimony was inadvertently omitted. The code permits, in the event of subsequent changes in the financial situation of the parties, that in respect to alimony, maintenance, custody of children, and the like the court may make such changes therein as the new circumstances render such changes expedient. She also asked for the expense of caring for an adopted child, the custody of which had been awarded to her in the original decree. The trial court denied her application *in toto*. On appeal, the court, after reviewing its prior cases, said (215 Iowa 30, 244 N. W. 720, 83 A. L. R. 1247):

"* * * it must be held that the provision of the decree *that no alimony is allowed by the court* is a binding adjudication as to the rights of the parties upon this question, * * *." And that "since there is no provision for alimony for the wife in the original decree, there can be no modification of the decree in so far as alimony for the wife is concerned, * * *."

With respect to the support money for the child, the court was of opinion:

"* * * 'that the husband's duty was a continuous one to support his child, and that the application, in so far as it involves an award to the wife for that purpose, was not, strictly, for an award of alimony, but for the support of the child, and that to this extent, under our former cases, it should have been allowed.' "

The case was disposed of by an affirmance of that part of the order denying her application for a modification of the decree as to alimony, but as to support of the child the cause was remanded for trial.

There are numerous cases from other jurisdictions sustaining the principles to which we have referred, to be found in the annotation in 83 A. L. R. 1248. The author states:

"It seems to be well settled, apart from statutory considerations, that, when alimony is in issue and is omitted from the decree, it cannot thereafter be inserted, at least in the absence of fraud or mistake."

And at p. 1250:

"It has been generally, though not invariably, held that statutes permitting modifications or changes as to alimony do not apply where no alimony has been granted in the decree."

Plaintiff seems to think that the case of Wallace v. Wallace, 74 N. H. 256, 67 A. 580, 13 Ann. Cas. 293, sustains her position. A sufficient answer to that contention may be had by referring to what the court said at p. 258:

"But in 1842, it was provided by the legislature, as to alimony or any allowance for the wife or children, that 'the court, upon proper application and notice to the adverse party, may revise and modify any order made by such court, and may make such new orders as may be necessary.' R. S., c. 148, s. 16."

Necessarily and properly the court concluded that such application "under this statute * * * may be made at any time; and when an application is properly made, it is the duty of the court to hear and consider it."

Nor do we find that Smith v. Smith, 88 N. J. Eq. 319, 102 A. 381, helps her position. There a revision of the divorce act had been made in 1902 (the opinion was filed November 19, 1917), striking from § 19 of the old act the words "when a divorce shall be decreed," and in their place was substituted the phrase *"or after decree of divorce."* The court was of the view that the insertion of the italicized clause in the place of the words we have quoted must be deemed (88 N. J. Eq. 321, 102 A. 381)—

"very significant in view of the doubt expressed both by the court of chancery and this court as to the power of the chancellor to deal with the subject of permanent alimony after final decree, except the matter was reserved in the decree itself. * * * The legislative purpose, therefore, must have been to widen the scope of the chancellor's power in dealing with the subject of permanent alimony *after the entry of final decree."* (Italics supplied.)

The conclusion logically followed that the statute as amended—

"expressly confers upon the chancellor the power to make an order for permanent alimony under the conditions which exist in the present case."

The annotator at pp. 1252 and 1253, 83 A. L. R., refers to cases like this as representing the minority view. Citation is also made of certain English cases which hold to the view that alimony might be granted after a decree dissolving the marriage. That doctrine is derived from the old rules of the English ecclesiastical courts and is generally foreign to the divorce laws in this country.

To be noted also is the fact that our statute (§ 518.22) provides that *"upon a divorce* for any cause [except where the wife is guilty of adultery] * * * the court may" order and decree to her such part of the husband's estate as it deems just and reasonable (within specified limits), and, by § 518.23, that *"after an order or decree for alimony* * * * the court * * * may revise or alter" the same. (Italics supplied.) We think the language of § 518.23 plainly limits the court's power to "revise and alter" an order or decree in the matter of alimony to cases where, *initially and as a part of the divorce proceeding,* "alimony, or other allowance" has been given to the wife. The title to the section reads "REVISION, AS TO ALIMONY, AFTER DECREE."

In Warren v. Warren, 116 Minn. 458, 133 N. W. 1009, the first syllabus paragraph, written by Mr. Justice Brown, reads:

"It is within the power of the court, under section 3592, R. L. 1905 [now § 518.23], *subsequent to the entry of a judgment for ali-*

*mony in a divorce action,* to make such modifications respecting the alimony awarded as the changed conditions and circumstances of the parties may require, * * *." (Italics supplied.)

Only *after the decree* may such application be made by either party and only where the amount of such alimony or other allowance is sought to be revised or altered. A proper consideration of the effect and finality of a decree of absolute divorce, as found in § 518.27, namely:

"When a decree of divorce from the bonds of matrimony is granted in this state, such decree shall completely dissolve the marriage contract as to both parties."

can leave little doubt as to what the legislative policy is—a final dissolution of the marriage status "as to both parties."

We think that plaintiff, even under her own theory of applicable law, has failed to meet the requirement stated in Smith v. Smith, 77 Minn. 67, 68, 79 N. W. 648, where we said:

"* * * *A court should be very slow, under any circumstances, to revise or alter a former decree,* and the application for a modification of an allowance should not be granted *unless it appears that the changed circumstances of the parties render the modification necessary.*" (Italics supplied.)

The foundation for her present claim is that defendant has inherited money from a wealthy father, and she now wants one-third of it. If such procedure may be had now, there will be nothing to estop her from again claiming another one-third share of whatever property defendant's industry, thrift, or even a further inheritance may bring him. Her newly found claim floats in an "aura of unreality."

The result reached by the trial court is right, and its order is affirmed.

Affirmed.