ORLANDO O. SKREEN v. HANS RAUK.[1]

May 29, 1947.

No. 34,403.

[1]Reported in 27 N. W. (2d) 869.

*Rockne & Rockne* and *Doherty, Rumble, Butler & Mitchell,* for relator.

*Frank J. Zima,* for respondent.

PETERSON, JUSTICE.

Certiorari to review an award of compensation.

Three questions are presented for decision: (1) Whether a finding that relator and respondent stood in the relation of employer and employe was justified by conflicting evidence, which, according to respondent's version, sustained an affirmative finding, and, according to relator's version, did not; (2) whether a finding that respondent was not a farm laborer was justified by conflicting evidence, of which some was to the effect that relator was engaged for "many" years in the business of commercial threshing as well as farming and some that he had never done any commercial threshing; and (3) whether the commission was justified in denying a motion to vacate the award and grant a rehearing upon the ground of newly discovered evidence, where the so-called newly discovered evidence consisted in part of self-serving declarations made by relator and some cumulative evidence, and there was no showing that such evidence could not have been discovered before hearing by the exercise of reasonable diligence.

There is no dispute concerning the fact that respondent was injured on October 28, 1943, while engaged in operating a combine owned by relator. Nor is there any dispute concerning the nature and extent of respondent's injuries. The dispute relates to whether there was an employment, and, if so, the nature of it.

According to respondent's version, sometime in September or October 1943, he and relator entered into an oral agreement or ar-

rangement whereby relator was to furnish the combine, tractor, gasoline, oil, and repairs, and respondent was to perform all labor in operating the same in connection with threshing operations to be done on the farms of others; that the work was to be done for relator's customers for whom he had done commercial threshing for many years prior to 1943; that relator had a list of such customers; that the work was to be done as relator directed; and that respondent's compensation was to be $1 per acre, payable out of the amount charged the customer, which was to be either $3 or $3.25 per acre, depending on circumstances. Respondent testified that relator stated that his reasons for making such arrangement were that he could not obtain necessary help to engage in such operations himself and that "He [relator] said he would furnish the tractor and combine and I do the work." "He said he couldn't afford to pay me by the hour because weather—there was weather conditions to contend with and breakdowns in the machinery and that it would be possibly not so convenient for him to pay me by the hour, but by the acre." In his testimony respondent characterized the contract as one of hiring, as where "one man hires another man."

Respondent further testified that he threshed for farmers as directed by relator; that, except in the case of a small three-acre job, he did no combining unless relator directed him to do the particular job; that all the customers for whom he did combining, except the three-acre job, were on relator's list of customers; that he used about 200 gallons of gasoline in operating the tractor, which, except for about ten gallons he donated, he obtained out of the pump and tank on relator's farm; that he incurred $12.70 for repairs of the combine, which he deducted from moneys collected; that at the time of injury he was engaged in combining the eighth job, of which seven were regular customers on relator's list; that some customers paid respondent in cash or checks and others paid directly to relator; and that after his injury respondent and relator settled their accounts on the basis of the contract mentioned. There was testimony that for one job he was paid in soybeans. During the threshing operations relator took the combine from respondent to do certain work on his

own farm. To show that relator was engaged in commercial threshing, respondent called him as a witness. As such, relator testified that for 14 years he had been engaged in farming; that he had a 580-acre farm; that for "many" years prior to 1943 he had been engaged in doing "custom" threshing for others for which he was paid in money; that he had worn out one combine as a result of his operations; and that the combine used by respondent was the second one he had owned.

Relator denied making the agreement. He testified that respondent leased the combine from him and agreed to pay as rental for its use all that he charged farmers for combining in excess of $1 per acre; that the charge for such work was to be $3 per acre; that respondent had a list of customers for whom he intended to do combining; that he did such work for his own customers; that relator exercised no control of any kind over respondent; that respondent was to furnish his own gasoline and oil; and that if he got any gasoline out of relator's pump and tank it was without relator's knowledge. There was some evidence that respondent during the time of the combining operations purchased 60 gallons of gasoline from a dealer, but there was no evidence that it was used in operating the combine. The amount mentioned is 140 gallons less than the undisputed evidence shows was used in such operations. It is undisputed that there was a settlement between the parties, but relator claimed that it was to determine the amount due to each on the rental contract basis as claimed by him, and not on an employment basis as claimed by respondent. At an adjourned hearing, relator changed his testimony as to the commercial nature of his threshing operations and stated that during the years prior to 1943 he did such threshing for neighbor farmers on an exchange-work basis.

Relator also showed that in at least one instance respondent had stated that he had rented or leased the combine from him and in another that he had signed a receipt for payment for threshing done without indicating on the receipt that he was an employe or agent.

After the award was made, relator moved to set it aside and for a rehearing upon the ground of newly discovered evidence. We shall

not encumber the opinion with an extended statement showing of what the alleged newly discovered evidence consisted, except to state that much of it consisted of self-serving declarations by relator to the effect that he had hired respondent or leased the combine to him, some cumulative evidence by his wife and farmers for whom he had done threshing in prior years, and a statement by a doctor that relator's wife was physically unable to attend the hearings because of illness.

■ The evidence presented a fact question as to whether there was an employment. True, in resolving the conflict in the evidence the commission expressed the view that the evidence of neither party was "entirely" satisfactory. Apparently, it adopted the evidence of respondent as the more satisfactory of the two. This court will not disturb a finding of fact by the commission for which the evidence and the inferences to be drawn therefrom afford reasonable support. Standing alone, respondent's evidence not only supports, but would compel, a finding of employment. Likewise, relator's evidence, standing alone, would not only sustain a finding that there was no employment, but would compel it. If there was no employment respondent was an independent contractor. Larson v. Le Mere, 220 Minn. 25, 18 N. W. (2d) 696. Doubt as to the propriety of the finding that there was an employment is generated not from any inherent weakness in respondent's evidence, but rather from relator's contradiction of it. On the one hand, there is not only respondent's testimony to the effect that there was an employment, but also such evidentiary indicia of an employment as the facts that relator furnished the tools (combine and tractor) to do the work; that he also furnished other means (gasoline and repairs) ; and that he not only had a right to control respondent and the combine, but that he effectively exercised such control. Relator's collecting for work done was consistent with an employment and inconsistent with a lease or rental. On the other hand, there is relator's denial of the employment. Relator's own testimony was subject to scrutiny because of the change he made in it. His attempt to show that respondent was to furnish the gasoline, by the fact that respondent purchased 60

gallons during the time when the threshing operations were carried on, failed for the reason that the evidence shows without dispute that about 200 gallons of gasoline were used, of which respondent admits donating ten gallons, and that the evidence fails to show that any of the 60 gallons so purchased by respondent were in fact used in connection with the threshing operations. Furthermore, it is practically undisputed that respondent used relator's gasoline. The case is simply one where the claims and the evidence in support thereof are diametrically opposite. It is precisely in the area of evidentiary conflict that the commission is to function by resolving disputed questions of fact one way or the other. As said in Walker v. Minnesota Steel Co. 167 Minn. 475, 478, 209 N. W. 635, 636: "The evidence would support a finding either way. The commission has spoken and their word is final." The decision of the commission should be sustained under such cases as Baker v. MacGillis Gibbs Co. 222 Minn. 460, 25 N. W. (2d) 219; Tillman v. Stanley Iron Works, 222 Minn. 421, 24 N. W. (2d) 903; Ohlsen v. J. G. Dill Co. 222 Minn. 10, 23 N. W. (2d) 15; Larson v. Le Mere, 220 Minn. 25, 18 N. W. (2d) 696; Sayre v. Johnson, 218 Minn. 586, 17 N. W. (2d) 76; Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N. W. (2d) 285.

An employe of a farmer engaged in threshing as a business, and not in doing his own threshing or in threshing for others casually or upon an exchange-work basis, is covered by the workmen's compensation act, § 176.01, subd. 13. Walker v. Wading, 180 Minn. 49, 230 N. W. 274; Charpentier v. Cumming, 178 Minn. 519, 227 N. W. 663. The facts here are indistinguishable from those in the last cited case. The case of Partridge v. Blackbird, 213 Minn. 228, 6 N. W. (2d) 250, is not in point, because there the farmer was engaged in threshing for others only casually. Some of the threshing there referred to was upon an exchange-work basis. Here, the evidence shows that relator engaged, according to his own testimony, in custom or commercial threshing for "many" years and that in the course thereof he wore out one combine and at the time of the accident here involved was using the second one he had purchased for such business. Furthermore, the farmer in the Partridge case

had no customers; the evidence here shows that relator had a list of them and that it was being used when respondent was injured.

◼ Denial of the motion to vacate the award and grant a rehearing on the ground of newly discovered evidence was justified. Ginsburg v. Byers, 219 Minn. 230, 17 N. W. (2d) 354; Elsenpeter v. Potvin, 213 Minn. 129, 5 N. W. (2d) 499. See, Carl v. DeToffol, 223 Minn. 24, 25 N. W. (2d) 479; In re Estate of Hore, 220 Minn. 374, 19 N. W. (2d) 783, 161 A. L. R. 1366.

Respondent is allowed, in addition to his costs and disbursements, an attorney's fee of $250 in this court.

Affirmed.

---

[1]Reported in 27 N. W. (2d) 872.