# CELIA M. BOITEAU v. CLAUDE A. BOITEAU.[1]

August 6, 1948.

Nos. 34,744, 34,745.

[1]Reported in 33 N. W. (2d) 703.

*Henry Halladay* and *Dorsey, Colman, Barker, Scott & Barber,* for plaintiff-appellant.

*Russell Smith,* for defendant-appellant.

THOMAS GALLAGHER, JUSTICE.

On April 5, 1946, a decree of divorce was entered herein. By the terms thereof, plaintiff was to convey her interest in certain real property to defendant, and the latter, in addition to certain cash payments, was required to pay plaintiff—

"as and for alimony and support money the sum of One Hundred Dollars ($100) per month on or before the 10th day of each month following the date upon which said final decree of divorce shall be entered and until the further order of this Court."

On July 13, 1947, plaintiff went through the formality of a marriage ceremony in the state of Washington with one Thomas R. Ruble. At that time she advised defendant that he might thereafter disregard the alimony payments required by the decree. Defendant had made payments up to that date, but in accordance with the advice received from plaintiff he ceased making payments thereafter.

It subsequently developed that Thomas R. Ruble had a wife living at the time of his purported marriage to plaintiff, making such marriage void. On November 28, 1947, by decree of the superior court of California, which then had jurisdiction of the parties, this marriage was annulled. Shortly prior thereto defendant wrote plaintiff as follows:

"Along the money line, if anything ever happens to Thomas [referring to Thomas R. Ruble], you can still depend upon one thing and that is as long as I have a job and am earning a salary, you can always depend upon receiving a share of it so that you will not have to depend upon anyone else, you will at least have something to live upon."

In the latter part of November 1947, plaintiff notified defendant that her marriage to Ruble had been annulled and requested him to resume alimony payments as required by the decree. About March 8, 1948, defendant moved to modify the divorce judgment and decree by striking therefrom the provision for alimony, on the ground that plaintiff's marriage to Ruble had terminated his obligation in this respect. On March 10, 1948, plaintiff moved to modify the judgment by increasing the alimony payments from $100 to $200 per month, on the ground that her changed physical condition, involving a cerebral hemorrhage which she had suffered, required substantial additional amounts for medical and hospital services.

Such motions were heard on March 19, 1948. No evidence, either by affidavit or otherwise, was presented at that time to indicate any changed circumstances or decrease in the earning capacity of defendant. The only affidavit submitted as to plaintiff's changed physical condition was that of her daughter, Dorothy M. Seery. No medical certificates or reports relating thereto were offered.

On March 31, 1948, separate orders were made by the court denying both motions. Each of the parties has appealed from the order denying his respective motion.

On appeal, it is contended by defendant that plaintiff's subsequent marriage relieved him of all obligation to pay alimony under the court decree. Plaintiff disputes this and at the same time asserts that her changed physical condition impelled an order of the trial court increasing her alimony from $100 to $200 per month.

■ M. S. A. 518.23 provides:

"After an order or decree for alimony, or other allowance for the wife and children, or either of them, * * * the court, from time to time, on petition of either of the parties, may revise and alter such order or decree respecting the amount of such alimony or allowance, and the payment thereof, * * * and may make any order respecting any of these matters which it might have made in the original action."

In construing this statute, we have held that the marriage of a divorced wife does not *ipso facto* cancel the obligation to pay the

installments of alimony awarded by the decree, but is merely evidence of a change in condition which may motivate the court in revising the decree upon proper application therefor. Thus, in Hartigan v. Hartigan, 142 Minn. 274, 277, 171 N. W. 925, 927, we stated:

"That a divorced wife's remarriage, while not ipso facto canceling either future or accrued alimony granted for support merely, strongly impels the court to cut off the future, and permit judicial discretion to annul the accrued, is held in Cohen v. Cohen [150 Cal. 99, 88 P. 267, 11 Ann. Cas. 520], supra; Brandt v. Brandt [40 Or. 477, 67 P. 508], supra; and Montgomery v. Offutt, 136 Ky. 157, 123 S. W. 676. * * *

\* \* \* \* \*

"We conclude that, while the remarriage of a divorced wife is a cogent and convincing reason for an abatement of the permanent alimony * * * it does not ipso facto abate payment, and when application is made to annul and cancel accrued instalments of such alimony the determination rests in the sound discretion of the court."

It is clear from the foregoing that this court is committed to the rule that even a valid marriage of a divorced wife does not *ipso facto* abate alimony, either past or future, but leaves the determination of such an issue to the court's discretion. It must follow that a subsequent void marriage of the divorced wife would have no more drastic effect on the original obligation to pay alimony, nor on the court's discretionary powers relative thereto. Accordingly, when these motions were made, the court's function was limited to a determination of whether changed circumstances of either party justified a modification of the original decree.

■ Examination of the record does not disclose evidence of such changed circumstances as would impel the court to modify the original decree. As previously stated, there was no evidence whatever as to changed financial conditions insofar as defendant's capacity to pay is concerned. Neither were there any medical certificates or reports submitted requiring a finding that plaintiff's

physical condition had changed to such an extent as to require increased alimony. Under such circumstances, we cannot say that the trial court abused its discretion in making either of the orders appealed from.

■ It is suggested that the letter from plaintiff to defendant at the time of her contemplated second marriage, wherein she agreed to relieve him of further obligations under the decree, constituted a valid agreement for the relinquishment of all alimony payments, binding upon plaintiff and upon the court. We do not find any authority supporting this viewpoint. On the contrary, it seems well established that the court in making an order of this kind, or in its subsequent modification thereof, is not bound by an agreement of the parties on the subject. Thus, in Erickson v. Erickson, 181 Minn. 421, 426, 232 N. W. 793, 795, we stated:

"Under our statute giving the court the same powers in revising a decree for alimony as it had in the original action, it seems entirely consistent to hold that it may on such revision disregard an agreement of the parties on the subject.

*     *     *     *     *

"In 58 A. L. R. note p. 639, the general rule is stated to be that where a court has general power to modify a decree for alimony or support, the exercise of that power is not affected by the fact that the decree is based on an agreement entered into by the parties to the action."

See, also, Warren v. Warren, 116 Minn. 458, 133 N. W. 1009; Sessions v. Sessions, 178 Minn. 75, 226 N. W. 211, 701.

It is clear that even if the correspondence between the parties here could be construed as a binding agreement, which we doubt, it was not binding upon the court, nor would it permit defendant to shift to society the burden of support assumed by him in his marriage and judicially decreed in the original divorce proceeding.

It is true that in Warner v. Warner, 219 Minn. 59, 17 N. W. (2d) 58, we refused to modify a decree based upon an agreement for a settlement between the parties, made a part of the decree and which, as the court determined, was made in lieu of alimony after extensive

negotiations, investigations, and upon advice of counsel of both parties. Therein, we directed attention to the fact that the original decree made no reference to further alimony, and stated (219 Minn. 78, 17 N. W. [2d] 67):

"To be noted also is the fact that our statute (§ 518.22) provides that 'upon a divorce for any cause [except where the wife is guilty of adultery] * * * the court may' order and decree to her such part of the husband's estate as it deems just and reasonable (within specified limits), and, by § 518.23, that 'after an order or decree for alimony * * * the court * * * may revise or alter' the same. * * * We think the language of § 518.23 plainly limits the court's power to 'revise and alter' an order or decree in the matter of alimony to cases where, initially and as a part of the divorce proceeding, 'alimony, or other allowance' has been given to the wife."

Therein, in refusing to modify the decree by directing alimony payments, we concurred with the trial court's finding (219 Minn. 70, 17 N. W. [2d] 64)—

"that it was the intention of the court * * * and the intention of the parties that a full and complete property settlement had been made, and that there was no alimony or support money [to plaintiff] of any kind to be paid by defendant."

Thus, in the Warner case it was held that, since the original order did not provide for alimony, there was no power under § 518.23 to modify it.

In the instant case, not only was there absent an agreement covering a property settlement in lieu of alimony, but actually the language of the decree specifically provided for alimony, and, as previously indicated, thereby reserved to the court under § 518.23 the power to modify it when changed circumstances required such modification. Clearly, the Warner case has no application here.

Orders affirmed.

Plaintiff is allowed $250 as attorney's fees, plus costs and disbursements herein.