MARGUERETTE JEANNE YOUNGNER v. STATE OF MINNESOTA, DEPARTMENT OF UNIVERSITY OF MINNESOTA, COLLEGE OF AGRICULTURE, ANIMAL HUSBANDRY.
STATE TREASURER, CUSTODIAN OF SPECIAL COMPENSATION FUND.

147 N. W. (2d) 354.

December 9, 1966—No. 40,127.

*C. Douglas Allert,* for relator.

*Robert B. Humm,* for respondent employer.

*Robert W. Mattson,* Attorney General, and *James A. Anderson,* Special Assistant Attorney General, for respondent state treasurer.

NELSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding compensation benefits to the dependents of a deceased employee.

The facts are not in dispute. On June 14, 1948, deceased, Carroll Edmund Youngner, while employed as a calf attendant at the dairy barn of the University of Minnesota College of Agriculture, was injured in the course of his employment when a spiral wire on a notebook punctured his right index finger. The next morning he noticed a sensitive area on his shoulder and finger and by June 21 the condition had become worse, causing him to lose time from his work. He was hospitalized on August 1, 1948, in the Dermatology Service at University Hospitals "because of multiple furuncles on the bearded area of the face."

Employer filed a formal notice of denial of liability for workmen's compensation on January 19, 1949. On March 16, 1949, employee filed a claim petition, to which employer filed an answer again denying liability. On May 31, 1949, employer and employee entered into a stipulation for settlement of the claim which provided for the payment of 10 weeks of compensation benefits amounting to the sum of $270 and medical and hospital benefits in the total sum of $460. A final receipt ac-

knowledging payment and signed by the employee was returned to the employer, who thereafter filed it with the Industrial Commission.

On July 7, 1950, Youngner, then 31 years of age, was admitted to the University Hospitals for the seventh time within 2 years and died there on August 22, 1950. The cause of his death was determined to be leukemia.

Some 11 years later, on September 1, 1961, relator, who is employee's widow, filed a dependents' claim petition for death benefits. On December 21, 1961, employer again filed an answer denying liability. After numerous continuances and delays requested by relator, the hearing on the claim petition filed against the employer was finally completed September 8, 1964. The referee's decision awarded $10,000 in workmen's compensation benefits, plus medical benefits, to relator. On November 9, 1964, relator filed for the statutory benefit of $2,500 from the special compensation fund.

The referee awarded interest on the compensation benefits assessed against the employer from the date the claim petition was filed, September 1, 1961, and interest on the amount awarded from the special compensation fund from the date of relator's application to the fund, November 9, 1964. The Industrial Commission affirmed the referee's decision. Relator brings the matter before this court for review, contending that she should have been awarded interest against employer on:

"Past due weekly installments of dependency compensation as they became payable from the date of death of employe (August 22, 1950) to the date when all installments should have been paid (October 31, 1956), and on the total amount of all installments due from the date they should all have been paid (October 31, 1956) to the date they were actually paid (October 31, 1964).

"Allowed medical expenses and funeral expense from the date of payment by relator (October 31, 1950) to the date of reimbursement by respondent-employer (October 31, 1964)."

Relator contends that she should have been awarded interest against the special compensation fund on:

"Past due weekly installments of dependency compensation as they

became payable from the date said installments should have commenced (November 7, 1956—one week after last installment from respondent-employer was due) to the date of payment (December 31, 1964)."

The Industrial Commission based its determination on the decision of this court in Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. (2d) 8, 15 W. C. D. 19, indicating that the facts in this case are similar in several respects to the facts in the Lappinen case. Both involve a final receipt for paid benefits, a span of 11 years between claim petitions, and the precise issue with reference to interest payment. In the Lappinen case the injured employee was paid compensation for 6 4/5 weeks of temporary total disability pursuant to stipulation and signed a final receipt for the payment of said benefits. Eleven years later he filed a claim petition for compensation for permanent partial disability. On certiorari this court reviewed the order of the Industrial Commission making a further award of compensation. One of the questions before us was when liability for payment of interest commences. We held that the liability for interest in Lappinen should be computed from the date of the filing of the claim petition, saying (224 Minn. 396, 29 N. W. [2d] 11, 15 W. C. D. 21):

"Where an employe received compensation for temporary total disability, for which he gave a final receipt which was filed with the commission, and thereafter, in a proceeding commenced about 11 years after the filing of the final receipt, he recovered an award for further compensation for permanent partial disability resulting from the same injury, no interest should be allowed on the award for the further compensation prior to the filing of the claim petition to recover it."

Relator has cited Bourdeaux v. Gilbert Motor Co. 220 Minn. 538, 20 N. W. (2d) 393, and Brown v. City of Pipestone, 186 Minn. 540, 245 N. W. 145, but in neither case did the deceased employee sign or file a final receipt for payments. In Beach v. American Steel & Wire Division, 248 Minn. 11, 78 N. W. (2d) 371, Lappinen v. Union Ore Co. *supra,* was distinguished from those cases. In Skreen v. Rauk, 224 Minn. 96, 27 N. W. (2d) 869, 15 W. C. D. 117, also cited by relator, the

injured employee did not sign a final receipt because he was not paid any benefits prior to the filing of the claim petition.

The Workmen's Compensation Act does not have a provision for the payment of interest on compensation payments. We have a statute, Minn. St. 334.01, which does impose an interest rate of 6 percent per annum on any legal indebtedness. Interest as damages is an award for default in failing to pay money when due. Lund v. Larsen, 222 Minn. 438, 24 N. W. (2d) 827. In the strict sense it is compensation allowed by law for the use or detention of money. Shealy v. United States (W. D. S. C.) 37 F. (2d) 918, 919. Liability for interest in this sense is purely contractual and arises only when there has been an agreement to pay it. Lund v. Larsen, *supra.*

Applying these standards in Lappinen, we held that there was no liability to pay interest in that case because there was no express promise to pay it, no statutory obligation to do so, and no default in making compensation payments when due. The same is true here. Clearly, there was no express promise to pay the dependency benefits and there was no statutory obligation to do so until a petition for payment had been made and determined. There was no default because no payment had been specified upon which a default could be predicated.

It has been argued by relator that the employer was in default. Such argument cannot prevail since the potential recipients of benefits did nothing to further the claim for a period of 11 years. There had been no determination of any amount due until after a claim petition was filed and the outcome determined, first by the referee and thereafter by the commission. It cannot be determined that a party is in default on an obligation to pay money when the amount of money "due" is not even applied for or ascertained. It has been said that interest "goes with the principal, as the fruit with the tree." Bourdeaux v. Gilbert Motor Co. 220 Minn. 538, 544, 20 N. W. (2d) 393, 396. This statement when true is based upon the facts that a debt is due and the principal is known.

As already set forth in a recitation of the facts herein, decedent had settled his claim for the payment of disability and medical expense, signed a stipulation, and given a receipt for payment. The stipulation provided in part:

"* * * and said payments when made constitute a full and final settlement of any and all claims the employee herein may have against the above named employer."

Relator contends that the receipt is not a "final receipt," as was the one in the Lappinen case where the court interpreted Minn. St. 1949, § 176.34, as providing two methods by which the employer's liability terminates. The court said (224 Minn. 414, 29 N. W. [2d] 21, 15 W. C. D. 37):

"* * * Two methods, having the same legal force and effect, are provided in § 176.34 for terminating an employer's liability for compensation, viz.: (1) The filing of a final receipt showing such payment, and (2) an order of the commission terminating the liability granted after notice and hearing in cases where the employe or his dependents refuse to execute a final receipt."

Relator admits that the award based on the stipulation might "be construed as a waiver by the employe of *his* rights to a formal hearing, and, therefore, terminating the liability of the employer to the *employe.*" That, however, was not what the court in Lappinen meant when it said (224 Minn. 416, 29 N. W. [2d] 22, 15 W. C. D. 39):

"* * * While a receipt showing full payment is never conclusive upon the question of further liability, it does operate to relieve the holder from further liability *and from interest* thereon until proceedings to establish such liability have been commenced." (Italics supplied.)

Since the statute is silent as to the payment of interest on workmen's compensation benefits, this court must be guided by past decisions involving like and similar questions. Lappinen v. Union Ore Co. *supra,* is a seasoned and well-reasoned decision based on solid principles and it is controlling on the issues of interest payment involved here.

Relator also claims interest on the allowance received from the special compensation fund pursuant to Minn. St. 1949, § 176.13(c), which was enacted to provide widows and dependent children with additional compensation when the children are still dependents at the time that the employer's obligation to pay compensation ceases. The special com-

pensation fund has no liability to pay such an award until the employer's benefits have been exhausted or unless the employer is in default. Here, we have already determined, the employer was not in default. Section 176.13(c) simply set out the procedure by which workmen's compensation benefits from the fund could be obtained, providing that the widow must file with the commission a petition accompanied by birth certificates or other proof of the ages of the dependents and by two affidavits concerning her own status. The statutory language precludes the theory that the fund was in default in not paying additional benefits prior to the time of the filing of a claim petition against it and, therefore, liable for interest prior to that time.

If this court were to hold that compensation becomes due at the date of injury or death, and that the employer is in default beginning with the date of the injury or death rather than the date when the claim petition is filed, the employer would become liable for the payment of interest before receiving notification that a claim petition had been filed. Under those circumstances an employee's widow could proceed to exhaust her own funds prior to filing a claim petition with full knowledge that the unclaimed and unascertained workmen's compensation payments would be drawing interest from the date of the injury or the date of death. The employer who did not wish to be burdened with the expense of interest would be forced to search out the injured and require them to file their claims. Interest, however, is traditionally used as damages for default in payment of a debt when due. Any other interpretation would be introducing a new concept into the Workmen's Compensation Act— one unanticipated by employers and not intended by the legislature.

The decision of the Industrial Commission should therefore be affirmed.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.