In re the Marriage of Howard F. KARON, Petitioner, Appellant,

v.

Frima M. KARON, Respondent.

No. C2–87–976.

Court of Appeals of Minnesota.

Jan. 12, 1988.

**718**

Robert Bennett, Bennett, Ingvaldson & McInerny, P.A., Minneapolis, for appellant.

Allen H. Aaron, Phillips, Gross & Aaron, Minneapolis, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and LOMMEN,* JJ.

## OPINION

LANSING, Judge.

· Howard Karon appeals an amended judgment and decree modifying a maintenance award and predicate orders determining jurisdiction. Frima Karon requests review of the amount of maintenance and attorney's fees awarded. We affirm.

---

* Acting as Judge of the Court of Appeals by

## FACTS

Howard and Frima Karon dissolved their 29–year marriage in 1981. As part of the dissolution negotiation, they signed a stipulation on property division and spousal maintenance. The trial court adopted most of its major provisions, including maintenance provisions under which Howard Karon was required to pay Frima Karon spousal maintenance for ten years: $1,200 per month for the first six years and $600 per month for the remaining four years. The judgment and decree also incorporated the following language from the maintenance stipulation:

> Except for the aforesaid maintenance, each party waives and is forever barred from receiving any spousal maintenance whatsoever from one another, and this court is divested from having any jurisdiction whatsoever to award temporary or permanent spousal maintenance to either of the parties.

At the time of the dissolution Frima Karon was 48, Howard Karon was 51, and both their children were emancipated. When the children were small, Frima Karon spent most of her time as a mother and wife, but also did some sales work. From 1965 until 1984, she held a number of different positions as a manufacturer's representative, primarily in women's sportswear. Her gross income was $16,500 in 1976, $16,595 in 1977, $17,100 in 1978, $18,200 in 1979 and $24,028 in 1981. She continued to work in fashion merchandising until fall 1984. In 1985 she obtained a real estate license, and she is currently employed by Edina Realty as a sales person. Her taxable net income for 1985, however, was only $8,236, and she liquidated a large part of her stock holdings to meet her expenses.

Howard Karon has worked for Ed Phillips and Company since 1960. At first he worked in sales, earning a gross income in 1979 of $65,000. In 1980 he was named senior vice president of sales—a position he still holds—and his gross income rose to $79,300 by 1981. By 1985, his net income was $106,353. In addition, since December

appointment pursuant to Minn. Const. art. 6, § 2.

1981 he has been accruing interest in a deferred payment plan which will be worth approximately $625,000 in 1995 if he stays with his company until that time.

In November 1985 Frima Karon moved to change the spousal maintenance award from temporary to permanent and increase the monthly payment to $3,500 based on her drop in income and Howard Karon's concurrent increase in income. Howard Karon moved to dismiss the motion, claiming that language in the original judgment and decree divested the court of jurisdiction to modify.

In February 1986 the trial court held that it had jurisdiction to modify spousal maintenance. After a hearing on the issue of maintenance, the court found that Frima Karon was "unable to obtain employment in the same field and under the same conditions," that her income had substantially decreased, and that it was "questionable whether she will ever be able to maintain an income similar to that which she enjoyed" prior to the fall of 1984. In February 1987 the court awarded Frima Karon $1,500 per month permanent maintenance and $1,000 in attorney's fees.

Howard Karon appeals the court's exercise of jurisdiction. Frima Karon appeals the amounts of maintenance and attorney's fees awarded.

## ISSUES

1. Did the trial court err in modifying the amount and duration of spousal maintenance?

2. Did the trial court abuse its discretion in awarding $1,500 per month permanent maintenance and $1,000 in attorney's fees?

## ANALYSIS

### I

■ Minn.Stat. § 518.64 (1986) provides broad general authority to modify a previously entered order for maintenance. In *Eckert v. Eckert*, 299 Minn. 120, 216 N.W.

2d 837 (1974), the supreme court held that this power did not extend to reinstatement of maintenance after expiration of the payment period. Although *Eckert* limits the court's statutory authority by requiring that motions for modification be brought before the date on which ordered maintenance payments are to terminate, it does not preclude modification in this case, as Frima Karon's motion was brought while she was still receiving maintenance payments. While the parties remained obligated under the original order, the court retained the power, under Minn.Stat. § 518.64, to "make an order respecting [maintenance] which it might have made in the original proceeding." *See also Plante v. Plante*, 358 N.W.2d 729 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Feb. 27, 1985).

Howard Karon also contends that (1) principles of waiver, estoppel and release prevented Frima Karon from bringing her motion; (2) Minn.Stat. § 518.64 is unconstitutional as applied because it violates the prohibition against impairment of contracts, the due process clause and the separation of powers provisions;[1] and (3) res judicata bars this action.

Howard Karon's claims that the stipulation constituted a waiver of Frima Karon's rights, estopped her from further litigating the issue, and released him from further obligations are based primarily on a contract theory, as is his assertion that the application of section 518.64 unconstitutionally impairs that contract.

■ However, in Minnesota, dissolution proceedings are not governed by contract, but by statute. *See* Minn.Stat. ch. 518; *see also Sessions v. Sessions*, 178 Minn. 75, 77–78, 226 N.W. 211, 212 (1929). Although stipulations may be helpful to the court in resolving disputed issues, no stipulation between the parties, even if adopted by the court, can contractually bind the court or prevent the subsequent modification of a

1. Although the required notice was filed with the attorney general's office, the attorney general elected not to intervene.

maintenance award. *Mark v. Mark*, 248 Minn. 446, 450, 80 N.W.2d 621, 624 (1957).

This result does not change merely because the incorporated stipulation purported to divest the court of jurisdiction to modify maintenance. *See Erickson v. Erickson*, 181 Minn. 421, 426, 232 N.W. 793, 795 (1930) (discussing with approval New Hampshire case which held that a court has no power to make an alimony award final and not subject to revision); *see also Adler v. Adler*, 373 Ill. 361, 26 N.E.2d 504 (1940) (court cannot divest itself of the power to modify); *Goldman v. Goldman*, 282 N.Y. 296, 26 N.E.2d 265 (1940) (although agreement might bind parties, terms could not limit statutorily conferred jurisdiction to modify).

Howard Karon also claims that the application of Minn.Stat. § 518.552 (1986), as amended in 1985 to provide that temporary maintenance should not be favored over permanent maintenance, results in a retroactive application of law to the 1981 decision, divests him of vested rights, denies him due process, violates the separation of powers clause, and unconstitutionally impairs his contract rights.

In *Nardini v. Nardini*, 414 N.W.2d 184, 196 (Minn.1987), the supreme court addressed the issue of retroactive application of the maintenance statute, holding that the amendments did not change the authority of the courts on the issue of maintenance, but merely clarified the law. *Id.* Moreover, Minnesota law does not recognize a vested right to an unmodified award of maintenance or support, because the court retains authority to modify such awards. Minn.Stat. § 518.64; *see also McClelland v. McClelland*, 393 N.W.2d 224, 227 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Nov. 17, 1986). The modification order violates no constitutional rights.

Finally, because Minn.Stat. § 518.64 expressly provides for modification of spousal maintenance awards under certain circumstances, the principles of res judicata do not prevent reopening the original judg-

ment and decree to modify the award of spousal maintenance.

The trial court violated no constitutional rights and properly exercised its jurisdiction to modify Frima Karon's spousal maintenance award.

**II**

Frima Karon claims the trial court abused its discretion by not awarding her $3,500 per month permanent maintenance and $10,279.25 in attorney's fees.

Under Minn.Stat. § 518.64, a trial court modifying a maintenance award must consider the factors listed in the maintenance statute, Minn.Stat. § 518.552 (1986). After considering these factors and examining itemized lists of monthly expenses from each party, the court found that Frima Karon's reasonable expenses amounted to $2,000 per month and that she could reasonably be expected to earn $1,000 per month. The court then ordered Howard Karon to increase his monthly payments to $1,500, based on Frima Karon's increased need and Howard Karon's increased ability to pay. The court has broad discretion in awarding maintenance. *O'Brien v. O'Brien*, 343 N.W.2d 850, 852 (Minn.1984). Because Frima Karon's total income will exceed her needs by $500 per month, the court's award is not an abuse of discretion.

Finally, although Frima Karon requested more than $10,000 in attorney's fees, the court awarded $1,000. The amount awarded does not constitute an abuse of the trial court's broad discretion, and we will not disturb this award on appeal. *See Quade v. Quade*, 367 N.W.2d 87, 89 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 11, 1985).

**DECISION**

Affirmed.