In re the Marriage of Howard F.
KARON, Petitioner, Appellant,

v.

**Frima M. KARON, Respondent.**

No. C2–87–976.

Supreme Court of Minnesota.

Jan. 30, 1989.

Robert J. Bennett, Bruce J. Schulte, Minneapolis, for appellant.

Allen H. Aaron, Mark R. Geier, Minneapolis, for respondent.

Linda M. Ojala, Minneapolis, amicus curiae, for American Ass'n of Univ. Women.

Aviva Breen, Executive Director, Comm. on the Economic Status of Women, St. Paul, Patricia A. O'Gorman, Chairperson, Joint amicus curiae Committee Family Law Section of Minn. State Bar Assoc., Cottage Grove.

YETKA, Justice.

This case is before the court on the appeal by the petitioner of a decision of the Hennepin County District Court, affirmed by the court of appeals, which modified an award of maintenance originally made pursuant to a stipulation of the parties in which the parties waived any right to future modification of maintenance. We reverse the trial court and reinstate the original terms of the decree of dissolution.

Frima and Howard Karon executed a stipulation in this dissolution action on June 27, 1981, and the trial court incorporated the terms of the stipulation into its judgment and decree entered August 31, 1981, *nunc pro tunc* to August 28, 1981. The decree awarded temporary maintenance to Frima for a 10–year period. The stipulation, as well as the judgment and decree, states that the parties waived any right to maintenance except as provided therein and that the court was divested of jurisdiction to alter the agreement or maintenance.

On February 7, 1986, the referee recommended and the court held, pursuant to Frima's motion, that it had jurisdiction to modify the dissolution decree pursuant to Minn.Stat. § 518.64 (Supp.1985). On March 11, the court affirmed the referee's recommendation. After a discovery period,

the referee recommended and the court ordered that the judgment and decree be modified to increase the amount of maintenance to Frima and made the maintenance award permanent rather than temporary. On April 19, 1987, the court affirmed the referee's order. The court made the increase in maintenance retroactive to October 1, 1986, and an amended judgment and decree was entered on May 14, 1987.

Howard appealed the issue of whether the court had authority to modify the decree while Frima appealed the amount of the modification and the amount of attorney fees awarded. The court of appeals affirmed the trial court. *Karon v. Karon,* 417 N.W.2d 717 (Minn.App.1988). Howard appealed to this court.

Howard F. and Frima M. Karon married on December 21, 1952. Howard commenced a dissolution proceeding in 1979, and the parties executed a stipulation on June 27, 1981. The court entered its judgment and decree on August 28, 1981, incorporating the terms of the stipulation. Both documents provided that Howard would pay Frima $1,200 per month for 6 years and $600 per month for 4 years thereafter. Both documents also stated:

> Except for the aforesaid maintenance, each party waives and is forever barred from receiving any spousal maintenance whatsoever from one another, and this court is divested from having any jurisdiction whatsoever to award temporary or permanent spousal maintenance to either of the parties.

Moreover, the stipulation states that the parties "hereby mutually release each other from all rights, claims and other obligations arising out of or during the course of their marriage relationship, except as specifically set forth elsewhere in this Stipulation."

Howard worked as the vice president of sales at Ed Phillips & Sons Co. before the dissolution. In January 1980, he became senior vice president of sales with a gross annual income of $79,337. In 1985, he earned $111,440 taxable income. In 1986, Howard estimated his 1986 gross salary at $126,000. In addition, Howard has been accruing interest in a deferred payment plan since 1981. The plan will be worth approximately $625,000 in 1995 if he stays with his company until that time.

Frima worked as a sales representative for women's sportswear. Beginning in the mid–1960's, she worked at various companies. In 1981, she earned $16,924; in 1984, she earned $13,956; and she estimated her 1985 income as "negligible" because her job had been eliminated. Conditions in the industry precluded her from finding similar employment, and in November 1985, she worked part time in a bakery for $5 per hour. In 1986, Frima took a real estate course and began selling real estate at Edina Realty. She earned no money during her first year of work. In September 1986, she had an IRA valued at $26,500.

In late 1985, Frima moved the court for a modification of the maintenance award, requesting permanent maintenance of $3,500 per month. Howard challenged the court's authority to modify the maintenance provision, arguing that the parties had waived any alteration of maintenance in the stipulation and that the court had divested itself of jurisdiction to alter the decree. A referee held that Minn.Stat. § 518.64 (Supp. 1985) granted it such authority and ordered that it would hear the modification motion on the merits after a discovery period. The district court affirmed this order.

After the completion of discovery, a referee heard the merits of the motion and ruled that a substantial change in circumstances had occurred, warranting a maintenance modification pursuant to section 518.64. The referee determined, however, that Frima had the capacity to earn $1,000 per month and thus increased maintenance to $1,500 per month rather than the $3,500 requested. The referee also made the award permanent because Frima had an uncertain future earning capacity. Finally, the referee awarded Frima $1,000 in attorney fees. The district court affirmed the referee's order.

Howard appealed the jurisdictional decision and the decision on the merits. Frima appealed the decision on the merits and the decision on attorney fees. She claimed

that the court had abused its discretion by not awarding the requested amounts.

The court of appeals affirmed the trial court. *Karon*, 417 N.W.2d at 720. This court granted Howard's petition for further review which, like the arguments before the court of appeals, presented only jurisdictional issues. Frima never filed a petition for further review.

The parties have confused and compounded numerous issues, but we believe the question before us is whether one of the adult parties to a stipulation in a dissolution matter made in 1981, which was approved by the trial court and which settled all issues, including maintenance, and which further provided that the parties expressly waived any right to maintenance except as provided in the original agreement, may now re-open the issue of maintenance to seek an increase therein. The trial court allowed reconsideration of the maintenance issue and the court of appeals affirmed. We reverse.

Howard argues that the terms of the original judgment and decree denied the court any further jurisdiction over the issue of maintenance. We agree. The language of the judgment and decree purports to divest jurisdiction. Section 518.64, however, states that the court may modify a maintenance award upon petition of a party. Minn.Stat. § 518.64, subd. 1 (1984). The court must decide, therefore, whether the maintenance issue was res judicata or whether the court correctly modified the maintenance award under section 518.64 regardless of the original order's language.

Initially, the legal doctrines at issue need clarification. Howard, in essence, argues that the form of res judicata known as direct estoppel precludes relitigation of the maintenance issue. Direct estoppel is issue preclusion in a second action on the same claim. Restatement (Second) of Judgment § 27 comment b (1982). The seminal issue, therefore, becomes whether the original decree constituted a final judgment in the dissolution on the maintenance issue. If so, it should have had the res judicata effect of preventing the court from hearing the modification motion. *See Hentschel v.*

*Smith*, 278 Minn. 86, 92, 153 N.W.2d 199, 204 (1967) (consent judgments have estoppel effect). Phrased in other words, we must decide whether the district court properly divested itself of jurisdiction over the issue in 1981. We hold that it did.

It is not the parties to the stipulation who have divested the court of ability to relitigate the issue of maintenance. The court had the authority to refuse to accept the terms of the stipulation in part or *in toto*. The trial court stands in place and on behalf of the citizens of the state as a third party to dissolution actions. It has a duty to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all. The court did so here and approved the stipulation and incorporated the terms therein in its decree. Thus, the decree is final absent fraud.

We have recognized that parties may stipulate to waive all maintenance at the time of the initial decree and that the courts are without authority to award it in the future. *McCarthy v. McCarthy*, 293 Minn. 61, 66, 196 N.W.2d 305, 308 (1972); *Warner v. Warner*, 219 Minn. 59, 68–69, 17 N.W.2d 58, 63 (1944); *see also Wibbens v. Wibbens*, 379 N.W.2d 225 (Minn.App.1985). Likewise, we have held that if maintenance is awarded and the term has expired, the court is equally without authority to award further maintenance. *See Eckert v. Eckert*, 299 Minn. 120, 124, 216 N.W.2d 837, 840 (1974).

We see no valid distinction between the two situations outlined above and the one now before us. Counsel for respondent would have us believe that waiver of a statutory right is without precedent. One can quickly see the fallacy of such an argument. In probate law, for example, heirs frequently enter into stipulations to distribute property or to waive statutory allowances. Antenuptial agreements have become quite common in the past several decades. In criminal law, we have held on numerous occasions that a defendant can waive constitutional rights.

Much of the material filed on behalf of the respondent contains language referring

to the economic status of divorced women. While the arguments made in reference to that status are important and should be addressed by both the legislature and the courts, they are not applicable in this case. That is so because the decision would cut both ways if the stipulation were upheld—the husband could not decrease maintenance and would be obligated to pay it for 10 years regardless of any financial setbacks. As a matter of fact, some of the materials submitted to us at oral argument suggest that his financial situation may have already deteriorated since this action was brought.

Amicus for the Family Law Section of the Minnesota State Bar Association stated at oral argument that setting aside the stipulation and decree is insulting and demeaning to women. Counsel who argued on behalf of the association is a woman. She took that position in response to counsel for respondent's implication that women involved in divorce cannot understand or act to protect their rights even when represented by counsel; therefore, the state must protect them in the manner it protects children in the role of parens patriae. Amicus's argument is compelling.

Moreover, what effect would affirmance have on other contracts entered into by married women? Would such a decision supporting the respondent ultimately lead to turning the clock back, outlawing not only antenuptial agreements, but also allowing parties to contest the validity of all instruments and contracts entered into on behalf of married women? Would we also question the validity of deeds of conveyances and purchases of expensive personal property? Where would the protection end? In short, intelligent adult women, especially when represented by counsel, must be expected to honor their contracts the same as anyone else. Any other holding would result in chaos in the family law field and declining respect for binding agreements as well.

Normally, stipulations are carefully drawn compromises which affect property distribution, real and personal, as well as future income. One may, for example, give or take certain items in order to have another reduced or eliminated. Setting aside one portion of the stipulation may totally warp the effects of other portions of the document. It would be difficult to imagine why anyone would agree to temporary maintenance or even maintenance itself for an indefinite period if the agreement could be later nullified. Why not litigate the matter at the time of the original dissolution proceedings? In the interest of judicial economy, parties should be encouraged to compromise their differences and not to litigate them. It is in the litigation of difficult dissolution matters where much of the acrimony and long-term scars are created, leading to still more litigation.

For all of these reasons, we reverse the modification of the original dissolution decree and remand to the trial court with instructions to enforce the terms of that initial dissolution decree.

COYNE, Justice (dissenting).

Consider that not unlikely event that a woman entering into a stipulation identical to that presented shortly thereafter suffers a totally disabling illness that threatens to quickly exhaust all of her available resources and that, during the same period, her former husband enjoys a substantial increase in income. The majority opinion broadly decrees that the agreement is valid, the waiver of jurisdiction is final and that the courts are powerless to fashion a remedy. I cannot concur in a decision which has this potential effect and I therefore dissent. I am simply unable to reconcile the majority decision with either the clearly stated legislative mandate contained in Minn.Stat. § 518.64 or the cumulative decisional authority of this court supporting the principle that awards of spousal maintenance are, upon motion, subject to the continuing jurisdiction and scrutiny of the trial courts.

I start with the limiting proposition that Howard has expressly conceded that all findings of fact and conclusions separate and apart from issues of jurisdiction and waiver are adequately supported by the record and are not clearly erroneous. As a

result, we must assume for purposes of this discussion that there exists the requisite change of circumstances warranting modification of the spousal maintenance award.[1] What remains is what I view as the focal issue, namely, whether the parties may, by agreement, divest the court of its continuing jurisdiction to entertain a motion for modification made pursuant to Minn.Stat. § 518.64. For the reasons which follow, I conclude that they cannot and that the trial court should be affirmed.

Admittedly, the language of the original judgment and decree, as well as the parties' stipulation, purports to divest the court of any jurisdiction to modify the provision for spousal maintenance. The majority has accepted Howard's contention that the judgment and decree should be given res judicata effect, precluding relitigation or reconsideration of the maintenance issue.[2] However, 60 years ago, in a somewhat different context, this court refused to give res judicata effect to language in a divorce decree which purported to divest the court of jurisdiction over maintenance. *Sessions v. Sessions*, 178 Minn. 75, 78, 226 N.W. 211, 212 (1929) (decree did not deprive court of jurisdiction to hold obligor in contempt for failure to pay alimony). Although there have been many changes in family law over the intervening 60 years, we have consistently recognized that jurisdiction over marriage dissolution is statutory. *E.g., DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 757–58 (Minn. 1981); *Kiesow v. Kiesow*, 270 Minn. 374, 380, 133 N.W.2d 652, 657 (1965). Since dissolution jurisdiction is statutory, the corollary of the observation that the district court has no power except that delegated by statute, *id.*, is that the district court cannot divest itself of the power validly delegated by statute.

As recently as 1985 we discussed the rationale for the exclusivity of the statutory definition of the parameters of jurisdiction in matters of family law. In *Angelos v. Angelos*, 367 N.W.2d 518 (Minn. 1985), after pointing out that because of our concern with preserving the finality of judgments and the orderly administration of justice an order denying a motion to modify or vacate a judgment is generally not appealable, we said that different considerations govern family law:

> In the practice of family law, however, modifications of judgments on the basis of changed circumstances are *sui generis* and do not fit within the reasons for the rules with respect to finality of judgments not appealed from within 90 days. These changes in circumstances do not ordinarily appear within the 90 days following entry of judgment. Moreover, domestic relationships, by their nature, continue under the jurisdiction of the court virtually throughout the lives of the parties. Accordingly, the legislature specifically authorized modification, in cases of changed circumstances, of those provisions of divorce decrees affecting custody, visitation, maintenance, and support. Minn.Stat. §§ 518.18 and 518.64 (1984).

*Id.* at 519.

Minn.Stat. § 518.55, subd. 1 (1986) contains this provision:

> In a judgment of dissolution or legal separation the court may determine, as one of the issues of the case, whether or not either spouse is entitled to an award of maintenance notwithstanding that no award is then made, or it may reserve jurisdiction of the issue of maintenance for determination at a later date.

Minn.Stat. § 518.64, subd. 1 (1986) provides for modification of a maintenance award:

---

1. Although she did not interpose a petition for further review, Frima contends that the modified maintenance award is inadequate to meet her needs and requests this court to increase the amount of the award. While this court may review any order involving the merits and take any action it deems appropriate, the interest of justice does not require review of the amount of the award in this case. In my view, a respon-

dent who seeks affirmative relief in the event this court grants further review should file a timely conditional petition for further review.

2. The form of res judicata known as direct estoppel results in issue preclusion in a second action on the same claim. Restatement (Second) of Judgments § 27 comment b (1982).

After an order for maintenance or support money, temporary or permanent, * * * the court may from time to time, on petition of either of the parties, * * * modify the order respecting the amount of maintenance or support money, and the payment of it * * * *.

It has long been established that section 518.64 limits the court's power to modify a maintenance award to those cases in which maintenance has been provided by order or decree. *Warner v. Warner*, 219 Minn. 59, 78, 17 N.W.2d 58, 67 (1944). Similarly, it is well settled that where there is neither an award of maintenance nor a reservation in the decree of jurisdiction of the issue of maintenance for later determination pursuant to section 518.55, the district court cannot thereafter award maintenance. *E.g., Eckert v. Eckert*, 299 Minn. 120, 123, 216 N.W.2d 837, 839 (1974). There is, however, nothing in either statutory or decisional law which suggests that the district court may divest itself of the jurisdiction which the legislature has accorded it. To the contrary, this court has declared that a stipulation for maintenance adopted by the court in its final decree does not limit or deprive the court of its discretionary power to determine whether changed circumstances warrant revision of the maintenance award. *Mark v. Mark*, 248 Minn. 446, 450, 80 N.W.2d 621, 624 (1957); *Ramsay v. Ramsay*, 305 Minn. 321, 323, 233 N.W.2d 729, 731 (1975). More recently, a provision authorizing a decree expressly precluding or limiting modification of any stipulated terms except those concerning support, custody, or visitation of children, included in a 1978 bill for amendment of chapter 518, was deleted before enactment.[3]

It seems only logical that the legislature crafted the modification provisions of section 518.64 in recognition of the obvious fact that the future is uncertain[4] and that, upon the requisite showing, a remedy should be available to either party to prevent continued enforcement of an award which has been rendered inadequate or excessive by the vagaries of the parties' financial or physical state. The omission of statutory authorization to the parties to limit by agreement the continuing authority of the court must be viewed as purposeful. To the extent the majority is willing to attribute sufficient clairvoyance to the parties in formulating their agreement to override the broad public policy embodied in the statute, I find it unacceptable.

I am similarly unpersuaded by the majority's apparent conclusion that even if the court has jurisdiction, Frima is bound by her express contractual agreement to relinquish the right to seek maintenance in excess of that provided by the parties' stipulation. To paraphrase Gertrude Stein,[5] a contract is a contract is a contract is a contract; so goes the argument.

It is true, of course, that a judgment for money damages entered pursuant to a stipulation for settlement and release is generally considered final upon expiration of the time for appeal absent fraud or some other circumstance which would justify relief pursuant to Rule 60.02, Minn.R.Civ.P. Similarly, a judgment and decree of dissolution entered in accordance with a stipulation for property distribution is final upon expiration of the time for appeal. *Angelos v. Angelos*, 367 N.W.2d 518, 520 (Minn. 1985).[6] Except for an award of the right to occupy the homestead, a division of real

---

3. *Compare* H.F. No. 2027, 70th Leg., 2d Sess. § 50(f) (1978) (first through third engrossments) *with* Act of Apr. 5, 1978, ch. 772, 1978 Minn.Laws 1062 (enacted version of H.F. No. 2027 which does not contain § 50 of earlier engrossments). H.F. No. 2027, § 50 was based on § 306 of the Uniform Marriage and Divorce Act, 9A U.L.A. 216–17 (1973). The legislature also rejected two previous attempts to enact § 306. *See* H.F. No. 1647, 70th Leg., 1st Sess. § 20 (1977); S.F. No. 1256, 67th Leg., 1st Sess. § 20 (1971).

4. Sharp, *Fairness Standards and Separation Agreements: A Word of Caution on Contractual Freedom*, 132 U.Pa.L.Rev. 1399, 1407–42 (1984).

5. Stein, *Sacred Emily*.

6. I note that the 1988 legislative session produced a statutory amendment that allows a court to relieve parties from most provisions of judgments and decrees if it finds the existence of any factors that would require relief under Minn.R.Civ.P. 60.02. *See* Act of Apr. 26, 1988, ch. 668, § 11, 1988 Minn.Laws 1007, 1011–12 (codified at Minn.Stat. § 518.145 (1988)).

and personal property may be revoked or modified "only where the court finds the existence of conditions that justify reopening a judgment under the laws of this state." Minn.Stat. § 518.64, subd. 2 (1986).

Nevertheless, the same statute which provides for the finality of a division of property, whether or not based on the parties' stipulation, provides for modification of the terms of a decree respecting maintenance, whether or not based on the parties' stipulation. Minn.Stat. § 518.64 (1986). We have, I believe, previously said all that needs to be said about the effect of a stipulation:

> Although the fact that the court in its final decree adopted the [maintenance] provisions of a stipulation entered into by the parties pending the action is entitled to considerable evidentiary weight in passing upon an application for [maintenance] revision, the stipulation is, nevertheless, purely advisory to the court and does not limit or deprive it of its discretionary power of determining whether a future change of circumstances warrants revision. A court-adopted stipulation is to be given such evidentiary weight as will make the court more reluctant, than it would otherwise be, to modify the original [maintenance] provisions. Stipulations of this kind are deemed to have been entered into in view of the authority conferred upon the court by the statute and are merged in the judgment, and are not so far contracts as to be controlling upon the court or as to preclude subsequent change, in a proper case, of the original final decree. It follows that the parties cannot by their stipulation bind the court as to what change of circumstance shall or shall not justify a change in [maintenance].

*Mark v. Mark*, 248 Minn. 446, 450, 80 N.W. 2d 621, 624 (1957).[7] These principles were reiterated in *Hellman v. Hellman*, 250 Minn. 422, 426–27, 84 N.W.2d 367, 371 (1957); *Mund v. Mund*, 252 Minn. 442, 446,

90 N.W.2d 309, 313 (1958); *Tammen v. Tammen*, 289 Minn. 28, 30, 182 N.W.2d 840, 842 (1970); and *Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971), are equally applicable here and adequately define a trial court's inquiry without interfering with its statutory exercise of jurisdiction.

In practical effect then, a trial court which gives considerable weight to the fact that the financial rights and obligations of the parties have been fixed in the decree as a result of their agreement may well be restrained in the exercise of its discretion but not controlled. *Kaiser v. Kaiser, id.* at 180, 186 N.W.2d at 683. And, of course, the tenor of that agreement must be considered in determining whether circumstances have so changed that the agreement has become fundamentally unfair. This analysis not only preserves the continuing jurisdiction of the trial court, but also provides a forum in which the parties are free to assert their views as to the significance of the agreement.

The majority, however, decrees a sweeping change in this statutory structure, asserting that it is inequitable to allow a party to "renege" on one provision of an agreement while accepting the benefit of another provision. At the same time, however, it refuses to acknowledge that the language of waiver and finality does not guarantee against unilateral modification by an obligor who falls on hard times. There is an old country saying that blood cannot be got from a turnip: an obligor who has no money can neither pay nor be forced to pay maintenance. If it is not fundamentally unfair to recognize that because of changed circumstances the obligor is no longer financially able to meet the terms of the judgment without modification, it is not fundamentally unfair to recognize that because of a marked change in circumstances the obligee's financial need exceeds that contemplated by the original

---

**7.** The statement that when the terms of a stipulation are embodied in the judgment, the stipulation becomes merged in the judgment and is not, in the absence of a statute on the subject, "so far of a contractual nature as to preclude the court subsequently from changing and modifying the judgment, upon application of one of the parties," first appeared in *Warren v. Warren*, 116 Minn. 458, 459, 133 N.W. 1009 (1912), 114 Minn. 389, 131 N.W. 379 (1911).

judgment or the obligor's financial ability to meet the obligee's needs has improved.

In summary, I view the majority decision as a significant departure from accepted principles of judicial supervision of spousal maintenance awards and contrary to declared public policy. Moreover, as the decision requires no particularized inquiry into the circumstances upon which the purported waiver was based or the specific consideration therefor, it offers little or no protection to one spouse from the potential overbearing by the other. Finally, it effectively strips the trial court of the time-honored broad discretion afforded in difficult matters of this nature.

WAHL, Justice (dissenting).

I join in the dissent of Justice Coyne.

SIMONETT, Justice (dissenting).

I do not think the court can divest itself of jurisdiction that it has. Courts do not self-destruct. Justice Coyne's dissent elaborates on this point. For me, the question is whether the parties can agree, between themselves, to waive their right to have the court modify agreed-upon maintenance.[1] Here not only did Frima expressly waive further maintenance, but she did so with the advice of counsel and the approval of the court. She now wants to go back on her word.

Our attitude on maintenance stipulations has been ambivalent. We have said a stipulation "is entitled to considerable evidentiary weight"; at the same time we have said it is "purely advisory" and does not deprive the court from ignoring it if a future change of circumstances warrants. *Mark v. Mark,* 248 Minn. 446, 450, 80 N.W.

2d 621, 624 (1957). Really, this is the same as saying the stipulation is meaningless. If the waiver only carries weight when there is no subsequent change in circumstances, it is not needed.

In this case it is unclear if the trial court gave any evidentiary weight to the spouse's waiver of further maintenance. The court appears to have treated this case like any other application for modification of maintenance, looking only to see if circumstances had changed subsequent to the stipulation. Having found that circumstances had changed, that the husband was earning even more money while the wife was earning much less, the court proceeded to modify maintenance upwards.

It seems to me we need a better approach to stipulations on maintenance.[2] Because of the unique institutional nature of marriage, these stipulations are not to be treated as ordinary contracts; they are not to be evaluated with a marketplace mentality. On the other hand, neither are maintenance stipulations to be ignored. Marriage partners who separate need to make agreements with some measure of finality so they can prudently plan their futures and get on with their lives.

The initial inquiry, it seems to me, is to determine if the maintenance waiver is to be binding.[3] How the fortunes of the parties fluctuated after the stipulation was made should not be relevant to this inquiry. The test is the conscionability of the waiver judged as of the time it was made, *i.e.,* was it then reasonable and fair? The burden of proof is on the party seeking to evade the waiver. The test is to be conducted within the institutional context of the marriage relationship. Among the factors to be con-

---

1. The court, of course, does not activate its jurisdiction sua sponte; it must be invoked by a party. Thus, Minn.Stat. § 518.64, subd. 1 (1986), says, "[T]he court may from time to time, *on petition of either of the parties,* * * * modify the order respecting * * * maintenance * * *." (Emphasis added.)

2. Only stipulations on maintenance are involved here. Stipulations on child support and property distribution involve quite different policy considerations on which there is already a body of case and statutory law.

3. We assume the stipulation for waiving maintenance was not the product of fraud, undue influence, or duress. A stipulation may be timely attacked for these reasons. *See, e.g., Ronnkvist v. Ronnkvist,* 331 N.W.2d 764 (Minn. 1983). In this case, the wife now claims on appeal that the husband had fraudulently concealed assets at the time of settlement negotiations. This claim was not presented to the trial court and, therefore, is not before us.

sidered are: To what extent the waiver was part of an interdependent package settlement, whether, for example, the waiver was a trade-off for other assets; to what extent the marriage had been a long-term, traditional marriage; each spouse's degree of economic independence; also, to what extent the parties took into account the unforeseen future with its uncertainties of health and job security; and whether each party was represented by counsel.

The policy of the law should be to promote marriage and the family by protecting the commitments inherent in marriage. While relationships outside marriage are perhaps becoming more common, marriage is still very much the norm because it denotes a particular kind of commitment, including a sense of permanence and a sense of responsibility by each spouse for the other's welfare. Implicit in the marriage commitment has been an understanding that if the money-making opportunities of one spouse are greater than for the other, the economically disadvantaged spouse, in the event of a marriage break-up, may expect some financial support; the maintenance may be permanent, temporary or rehabilitative, or none at all, depending on the particular circumstances. The longer the marriage, the more bread-winning and home-making duties are divided, the more likelihood the need for maintenance by the economically disadvantaged spouse outweighs contractual provisions curtailing that need. This has been the law's policy over the years.

On the other hand, some marriages are quite short. Or, as is becoming more common, there may be a marriage where both spouses have careers outside the home and both have a roughly equivalent measure of individual economic independence. In such cases there is more justification for enforcing the maintenance waiver.

I am not interested in cataloguing a list of factors to weigh in determining the reasonableness of a maintenance waiver, nor in assigning weight to the various factors; nor are the factors here mentioned to be applied mechanically. The court sits as a court of equity. The guiding principle, however, is to judge the validity of the waiver as of the time it was given, not by subsequent changes of circumstances that, though unforeseen at the time of the waiver, were nevertheless assumed in the bargaining process as risks inherent in life.

It can be argued that by approving the settlement stipulation and incorporating its terms into the divorce decree, the trial court found that the maintenance waiver was reasonable and fair at the time it was made. Most stipulated divorce actions, however, are proved up as default matters, the court assuming, especially if both spouses are represented by counsel, that the stipulation is appropriate. The court may not be aware of abuses of trust and confidence that may exist despite representation of counsel. While the court reviews what appears to be the reasonableness of the overall settlement stipulation, ordinarily it cannot be expected to make an in-depth inquiry into the specific reasonableness of a waiver of maintenance.

I would reverse and remand for findings on whether or not the waiver is enforceable. While I dislike prolonging this case, it appears that there will be further litigation in any event. *See* footnote 3. If the waiver is found to be nonbinding, there is no need to retry the second-step issue, namely, whether there has been a substantial change in circumstances. Frima would be entitled to the maintenance increase already ordered and not now disputed.