In re the Matter of Michael **BERENS,**
Petitioner, Respondent,

v.

**Joanne C. BERENS, Appellant.**

No. C1–89–228.

Court of Appeals of Minnesota.

Aug. 8, 1989.

Review Denied Sept. 27, 1989.

---

Elizabeth W. Norton, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minn., for petitioner, respondent.

M. Sue Wilson, Wilson & Binder, Minneapolis, Minn., for appellant.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from the trial court's order denying, in all respects, appellant Joanne C. Berens' motions to modify spousal maintenance, or in the alternative to vacate a judgment of dissolution. We affirm.

## FACTS

Joanne and respondent Michael Berens' 25-year marriage was dissolved by a judgment and decree entered November 5, 1984. The judgment was based on a stipulation entered into and signed by the parties and their attorneys on October 31, 1984. The same attorneys appear on this appeal.

Joanne was awarded temporary spousal maintenance under the decree, which provided her $2,000 per month for 48 months, $1,000 per month for 24 months thereafter, and no maintenance payments after November 1, 1990. Additionally, the stipulation and judgment contain an express waiver of Joanne's rights to modification of spousal maintenance. Neither party sought court review of the original decree until Joanne brought this action on July 22, 1988.

Under the judgment, Joanne did not receive the entire interest in the parties' homestead and was in fact ordered to sell the property. On January 21, 1985, Joanne informed Michael of her desire to remain in the marital homestead rather than have it sold pursuant to the 1984 stipulation and judgment. She claimed that she lacked capacity to enter into a knowing and voluntary agreement due to a brain cyst which was removed a week after the original judgment was entered. In lieu of seeking to reopen the judgment, she proposed a negotiated solution whereby she would give up her interest in certain other assets in exchange for Michael's interest in the homestead. A voluntary modification of the terms and conditions of the judgment was reached in May 1985, and Joanne obtained sole title to the homestead.

Joanne currently resides in the homestead, which the trial court found to have a market value of $225,000 (the homestead was valued at $165,000 at the time of the dissolution). The current mortgage of $14,524.98 is scheduled to be paid off in November 1993. Each party received approximately $250,000 of marital assets under the property settlement. The trial court found that both parties have increased their net worth since the dissolution. It found that Joanne's net worth of $527,488 has more than doubled since the date of the dissolution. It found Michael's net worth to be $520,000, including the assets of his current spouse, but not including any discount for income taxes he must pay on retirement benefits.

Michael was employed as a lawyer during the marriage and continues to practice law. Joanne was a homemaker and caregiver to the parties' four children. The children have all reached the age of majority. The trial court found that her 1987 monthly gross earnings were $493.24 a month.

Although Joanne was employed as a medical technologist prior to marriage, she stated in an affidavit filed with the court in 1983 that she was currently unemployable

in that field due to her lack of certification and the length of her absence from that field. The trial court found that neither party anticipated that Joanne's earning capacity would be significant in the future and that she did not rely on the prospect of such income when settling for temporary spousal maintenance.

The parties' stipulation provides that when spousal maintenance ceases completely after November 1990, Joanne will then be entitled to draw upon retirement benefits awarded to her in the judgment. The trial court here found that Joanne will be able to claim an annuity in an amount sufficient to replace the $1,000 per month spousal maintenance after November 1990, and that Joanne failed to show why such provision "which she agreed to upon advice of counsel, is now unreasonable and unfair."

Finally, the trial court found that Joanne had not met the burden of demonstrating a substantial increase in need or a decrease in income since the original dissolution, but in fact her income and assets had increased during the time in question.

The trial court denied all of Joanne's motions on the merits, consistent with *Karon v. Karon*, 417 N.W.2d 717 (Minn.Ct. App.1988), which was before the Minnesota Supreme Court at that time. The trial court did not address the effect of Joanne's agreement to waive all rights to modification of maintenance in the stipulation and judgment entered by the trial court in 1984.

## ISSUES

1. Did the trial court err in admitting exhibits which show modifications of the original dissolution decree and changes in the circumstances of the parties?

2. Did the trial court err in denying Joanne's motion to modify the original decree by adding a cost-of-living adjustment?

3. Did the trial court lack jurisdiction to consider Joanne's motion to modify the original maintenance decree under *Karon v. Karon*, 435 N.W.2d 501 (Minn.1989)?

## ANALYSIS

1. Following Joanne's motion to reopen the judgment in 1988, Michael filed an opposition memorandum, including certain exhibits. Joanne contends that these exhibits were improperly before the trial court. Joanne does not contest the authenticity of these documents, which the trial court relied upon in making its findings of fact, conclusions of law and order.

■ We see no error here. Joanne correctly notes that all motions must be supported by accompanying affidavits under Family Court Rule 2.02. It is also true that no supporting affidavits were filed with these exhibits. However, the exhibits complained of were not submitted with a motion and rule 2.02 is inapplicable. Michael's memorandum did not seek affirmative relief but was merely responsive to Joanne's motion. Thus it is a pleading governed by Minn.R.Civ.P. 11, which provides:

> Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit.

■ Nor are these exhibits inadmissible evidence of an offer or acceptance of consideration in compromising a claim under Minn.R.Evid. 408. Rather, the exhibits simply show the subsequent voluntary modification of the original divorce decree and relevant changes in the circumstances of the parties.

Evidence that the original decree has been modified, regardless of whether this was achieved by a compromise, is relevant and admissible in this action. Rule 408 "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." Minn.R.Evid. 408. Evidence of modification of the 1984 decree and relevant changes in the circumstances of Joanne was clearly discoverable by Michael.

Aside from the above complaints, Joanne made no specific objection to the contents of the exhibits. Accordingly, the trial court did not err in admitting them.

2. The trial court found that Joanne "failed to set forth any facts sufficient to show a necessity for ordering the parties' judgment and decree to be amended to include" a cost of living increase provision. Accordingly, the court denied her motion to include such appendix, which provides for cost-of-living increases in maintenance orders. A "court may waive a cost-of-living adjustment in a maintenance order if the parties so agree in writing." Minn.Stat. § 518.641, subd. 1 (1988). Consistent with our conclusion that Joanne expressly waived all rights to modification of the original decree, as discussed below, she also waived her right to request a cost-of-living clause pursuant to Minn.Stat. § 518.641, subd. 5.

3. The trial court issued its findings of fact, conclusions of law and order for judgment, noting that the supreme court had granted review of this court's opinion in *Karon*. However, the trial court did not make a ruling on the effectiveness of the contractual waiver entered in the original stipulated judgment. Nor did it sufficiently address whether it had jurisdiction to decide Joanne's motions to modify the decree.

Instead, the court concluded on the merits that Joanne failed to meet her statutory burdens for modifying or vacating the judgment. *See* Minn.Stat. §§ 518.64, 518.-145 (1988). Nonetheless, Michael did assert at trial the issue of the enforceability of the waiver, and that issue is preserved for appellate review. Additionally, an objection to subject-matter jurisdiction of the court may be raised at any time. *Mangos v. Mangos*, 264 Minn. 198, 202, 117 N.W.2d 916, 918 (1962).

Following the trial court's order denying Joanne's motions, on January 30, 1989 the supreme court issued its *Karon* decision. *Karon* involved a stipulated dissolution agreement, approved by the trial court, which settled all issues and which further provided that the parties expressly waived any right to maintenance except as provided in the original agreement. The stipulation provided:

Except for the aforesaid maintenance, *each party* waives and is forever barred from receiving any spousal maintenance whatsoever from one another, *and this court is divested from having any jurisdiction* whatsoever to award temporary or permanent spousal maintenance to either of the parties.

*Karon*, 435 N.W.2d at 502 (emphasis added). The trial court later allowed reconsideration of the maintenance issue, this court affirmed, and the supreme court reversed.

The supreme court held that the original decree constituted a final judgment on the maintenance issue and the trial court was barred by res judicata from hearing the modification motion. *Id.* at 503 (citing *Hentschel v. Smith*, 278 Minn. 86, 92, 153 N.W.2d 199, 204 (1967) (consent judgments have estoppel effect)). The supreme court also held that the trial court properly divested itself of jurisdiction over the issue in entering the original judgment. *Karon*, 435 N.W.2d at 503.

The trial court was held to have fulfilled its duty to protect the interests of both parties and the state when it approved the stipulation and incorporated the terms therein in its decree. *Id.* The supreme court stated:

We have recognized that parties may stipulate to waive all maintenance at the time of the initial decree and that the courts are without authority to award it in the future. *McCarthy v. McCarthy*, 293 Minn. 61, 66, 196 N.W.2d 305, 308 (1972); *Warner v. Warner*, 219 Minn. 59, 68–69, 17 N.W.2d 58, 63 (1944); *see also Wibbens v. Wibbens*, 379 N.W.2d 225 (Minn.App.1985). Likewise, we have held that if maintenance is awarded and the term has expired, the court is equally without authority to award further maintenance. *See Eckert v. Eckert*, 299 Minn. 120, 124, 216 N.W.2d 837, 840 (1974).

*Id.* Finally, the court reasoned that as a policy matter, "intelligent adult women, especially when represented by counsel, must be expected to honor their contracts the same as anyone else." *Id.* at 504.

Applying the *Karon* standard, we conclude, as a matter of law, that the trial court divested itself of jurisdiction to hear Joanne's motion to modify maintenance pursuant to Minn.Stat. § 518.64. Both parties and their attorneys signed the 18–page stipulation, which made "a complete adjustment and settlement of property rights, attorney fees" and adjusted and settled "all other matters and things of every kind and nature existing between" the parties. It reads in part:

> [*Joanne*] expressly waives all rights to modification of the maintenance ordered herein including but not limited to her rights under Minnesota Statutes § 518.64 for modifications of orders and decrees.

(Emphasis added.) The trial court approved and entered the above waiver clause, without alteration, in its conclusions of law and decree. *See Karon*, 435 N.W.2d at 503 (trial court has authority to refuse to accept the terms of a stipulation in part or *in toto*).

The balance of the stipulation was adopted almost in its entirety by the trial court in its findings of fact, conclusions of law and order for judgment entered November 5, 1984. The decree expressly states that it is in accordance with the terms of the stipulation and that Joanne has waived all further appearances in the matter.

In *Karon*, the waiver agreement was mutual, as each party gave up the right to receive spousal maintenance from the other. The court noted in upholding the stipulation that it was binding upon both spouses and that just as the wife/obligee could not seek increases, the husband/obligor could not seek decreases regardless of any financial setbacks. *Id.* at 504. Here, however, only Joanne expressly waived all rights to modification of maintenance. We do not here decide whether Michael is barred from modification of maintenance because that issue is not before us.

■ With regard to Joanne, the waiver is clearly enforceable. Joanne argues there was no consideration for her waiver and it is not a binding contract. In fact, the settlement of all claims relating to the

marriage, including maintenance and division of property, was ample consideration for the stipulation and all of its negotiated terms. *See McCormick v. Hoffert*, 186 Minn. 380, 243 N.W. 392 (1932).

■ Only the court can divest itself of jurisdiction which it has been granted through the legislature. *See Karon*, 435 N.W.2d at 503 (it is not the parties to the stipulation who have divested the court of ability to relitigate the maintenance issue). We hold that in incorporating Joanne's waiver in the decree, the trial court terminated its jurisdiction over Joanne's future motions to modify, and that no express language of divestment was necessary.

Generally, a trial court has jurisdiction to modify an award of maintenance before its expiration. Minn.Stat. § 518.64, subd. 1; *see Wibbens v. Wibbens*, 379 N.W.2d 225, 226 (Minn.Ct.App.1985). However, concurrent with or subsequent to an award of spousal maintenance, a trial court can also act to "terminate forever any possibility of a spouse receiving" maintenance. *Eckert v. Eckert*, 299 Minn. 120, 126, 216 N.W.2d 837, 840 (1974).

Contrary to Joanne's assertions, express language of divestment is not the only way a trial court may exercise its power to divest itself of jurisdiction over maintenance issues. An original decree constitutes a final judgment if it has the res judicata effect of preventing the court from hearing the modification motion. *Karon*, 435 N.W.2d at 503. In essence, by entering a judgment which is *final* against a party, the trial court divests itself of jurisdiction.

Joanne looks to a footnote by this court to support her proposition that the parties should have used the exact words used in the *Karon* waiver ("this court is divested from having any jurisdiction") before the present motion to modify could be barred on grounds of lack of jurisdiction. *See Glorvigen v. Glorvigen*, 438 N.W.2d 692, 699 n. 2 (Minn.Ct.App.1989). The *Glorvigen* footnote, however, is dicta. There, no agreement to waive rights to modify maintenance was involved, nor did the trial

court act, in any way, to divest itself of jurisdiction on the maintenance issue. As *Glorvigen* involved a motion to vacate a dissolution decree on different grounds and as no motion to modify was brought, the case is inapposite.

Joanne's reliance on *Lyon v. Lyon,* 439 N.W.2d 18 (Minn.1989) (maintenance award reversed where spouse seeking maintenance took $3.6 million property settlement and income from property was found sufficient to meet her expenses), is misplaced. Observing that the case was an anomaly due to the large marital estate involved, the supreme court declined to make its reversal of maintenance final, and left the maintenance issue within the trial court's jurisdiction. *Lyon* did not involve a motion for modification, nor was any trial court action to terminate jurisdiction under review, thus it is also inapposite.

*Karon* and *Eckert* control the decision here. Under *Karon,* either a binding contractual waiver or express language of divestment, when entered by a trial court, leads to a final judgment preventing the court from hearing future modification motions. *Karon,* 435 N.W.2d at 503. Here, the trial court entered Joanne's express waiver as part of its findings and decree. Thus it terminated her right to seek maintenance under *Eckert.* By adopting the terms of the stipulation and incorporating those terms in the decree, the court divested itself of jurisdiction to hear any claims for modification by Joanne. *See Karon,* 435 N.W.2d at 503.

■ Even if the trial court had jurisdiction to consider Joanne's motion, Joanne is bound by her express waiver. Appellate courts will not set aside contracts to waive maintenance which are fair and equitable, made with competent counsel representing the parties, and specifically made a part of the trial court's findings. *Warner v. Warner,* 219 Minn. 59, 63–65, 68–69, 17 N.W.2d 58, 60–61, 63 (1944); *see contra, Karon,* 435 N.W.2d at 506 (Coyne, J., dissenting).

■ Joanne contends that this waiver, even though entered by the trial court, is invalid as against public policy. However, the *Karon* decision names judicial economy

and compromise as two of the overriding policy reasons for its holding that stipulated judgments of dissolution are enforceable in their entirety. *Karon,* 435 N.W.2d at 504.

Joanne asserts that the law at the time of the original stipulation and decree was unfair because women like Joanne who were coming out of long-term marriages were more likely to be limited to rehabilitative maintenance. *See Otis v. Otis,* 299 N.W.2d 114 (Minn.1980); *McClelland v. McClelland,* 359 N.W.2d 7 (Minn.1984). She argues her maintenance terms should be reformed to reflect the law's shift favoring permanent maintenance where doubt exists regarding the ability of a long-term spouse to rehabilitate. *See Nardini v. Nardini,* 414 N.W.2d 184 (Minn.1987). Even if we were disposed to do so, there is no vehicle in the law for such a reformation.

■ Moreover, the trial court found that the parties never anticipated that Joanne would become self-supporting. The terms of the stipulation provide for maintenance payments to end at the time when Joanne is eligible to receive pension benefits. Considering this provision, the stipulation as entered in 1984 does not appear either unreasonable or unfair. Further, the trial court found no substantial change in circumstances which now make the original decree unfair. Minn.Stat. § 518.64. Regardless of Joanne's express waiver of all rights to modification, and her delay in seeking to reopen the stipulated maintenance, her policy arguments are not persuasive.

It is also asserted that because Joanne had a brain cyst and was an "active" alcoholic at the time she signed the stipulation, she lacked capacity to enter into a binding agreement, and therefore the judgment should be vacated. We note, however, that counsel did not make this contention at oral argument. The trial court found that her brain cyst and alcoholism could not be assumed to be factors which so materially affected her rational judgment as to constitute a basis in law for overturning the

stipulated judgment and decree. It further found that any motion based on alleged mental incapacity was no longer timely. We agree.

 Joanne stated that she has "very little recollection of October, November or December, 1984," and that at the time she entered into the stipulation she had a serious problem with alcohol abuse. This is not sufficient evidence to support a claim of incapacity. Regardless, Joanne confirmed her acceptance of the decree when the parties thereafter voluntarily modified the decree to give sole title to the homestead to Joanne.

The trial court determined that Joanne failed to meet her burden under Minn.Stat. § 518.64, subd. 2 regarding both her motions for an increase in spousal maintenance and for permanent maintenance. However, because we hold that the court had no jurisdiction to consider Joanne's motion for modification, we decline to discuss this issue further.

Additionally, we note that Joanne did not mention or contest in her brief the trial court's denial of her motion to vacate the judgment and decree pursuant to *Lindsey*

*v. Lindsey*, 388 N.W.2d 713 (Minn.1986), or Minn.Stat. § 518.145.

 Finally, the trial court did not err in denying both parties' motions for attorney fees. Joanne failed to prove her case. She has substantial assets with which to pay her own attorney fees.

## DECISION

The trial court did not abuse its discretion in denying Joanne's motions to modify the original stipulation and judgment. The trial court lacked jurisdiction to consider the motions because Joanne's express waiver of all rights to modification of maintenance, entered in the original judgment, is binding under the recent supreme court *Karon* decision. The trial court did not abuse its discretion in disposing of Joanne's evidentiary objections.

Affirmed.